(No. 5032-

MARIE WELCH, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed July 24, 1964.*

G. WILLIAM HORSLEY and ROBERT F. VESPA, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimant, Marie Welch, seeks recovery of $25,000.00 for personal injuries allegedly suffered on August 19, 1961 as the result of a fall while claimant was attending the automobile races at the Illinois State Fair, Illinois State Fair Grounds, Springfield.

Claimant testified as follows:

On August 19, 1961, she attended the Illinois State Fair, and purchased tickets to attend the automobile races to be held that day. She could not get tickets to the Grandstand where she had previously sat for such races, but bought three tickets for the Bleachers. The Bleachers were dry when she arrived about 2:00 P.M. with her husband and grandson. She entered by going up a ramp constructed of wooden boards. Rain fell after she

was seated, and about 4:00 P.M. the races were called off. Claimant proceeded to leave the Bleachers by walking down the north side of the wooden ramp with her right hand on a wooden railing. The railing did not extend to the bottom of the ramp, but stopped about four boards short (approximately two and one-half feet). Her husband was walking on the south side of the ramp, which was about six feet wide. Claimant then apparently caught her toe on a splinter or crack, which she had not seen on the bottom board of the ramp. Her shoe came off, tearing the sole, and she was thrown forward on her face, allegedly sustaining the injuries of which she now complains. Claimant was wearing "wedgies", which have a solid heel and no back. She was not bumped from behind.

She was assisted to the First Aid Station, and the doctor in attendance said she had a dislocation of her shoulder. She then walked about a mile to the main gate, and went home. On August 21st she was x-rayed, and her arm put in a sling. Her doctor told her she had a "knob" broken off her shoulder. She was then hospitalized for one day.

Kenneth Welch, claimant's husband, testified that he and his wife walked up the ramp to the Bleachers using the handrail on the right-hand side. He came down the same side. The boards were damp, but not slick. About thirty minutes after the accident, he came back and looked at the ramp, and noticed the bottom board had a splinter sticking up about a half-inch and extending about two feet. In Welch's opinion, the splinter looked old. Welch formerly worked in a sawmill, and he stated that he could tell it had probably weathered for about six to eight months.

Pictures of the ramp revealing the splinter were received in evidence. Mr. Welch testified the pictures ac-

curately represented the condition of the ramp as it existed on the day of the accident.

The Departmental Report from the State Fair Office, dated May 16, 1962, written by Louis London, Assistant General Manager of the Illinois State Fair, stated that the ramp in question "was in perfect shape prior to the Fair, and still is in A-1 condition at the present time."

Mr. London testified that the ramp is intended to be permanent, and had been installed for about five or six years, but has been replaced a number of times. He stated that, before the State Fair opens, carpenters and maintenance men check the Bleachers and the ramp to see if there are obstructions. Mr. London indicated that the ramp is ten feet long, leads to an aisle about three feet above the ground, and the photographs submitted by claimant accurately portray the ramp. London testified that a carpenter foreman had been assigned to check the ramps in the entire section, but he could not say that the inspection was actually made. London could not identify the carpenter foreman assigned to check the section, but could apparently have found out by checking his work sheet.

London said that some new boards were replaced in the Bleachers, but records would not show exactly where the work was done. He did not know of the accident until approximately eight months after its occurrence.

Claimant argues that, since she was an invitee, respondent had the duty of exercising reasonable care and caution to keep the premises safe for her use. Claimant further argues that, if respondent had wanted to dispute claimant's charge of negligence, it would have called as a witness the carpenter foreman, who allegedly inspected the ramp prior to the opening of the Fair, and the ticket-taker or attendant, who, according to Mr. London, were on duty at the time in question.

Respondent counters that claimant did not prove respondent's negligence, claimant's freedom from contributory negligence, or the proximate cause of the fall.

In the opinion of this Court, respondent was negligent in the maintenance of the ramp. Photographs revealed that there was a large splinter sticking up from the bottom board. It would seem that the defect should have been discovered upon proper inspection. Respondent did not attempt to rebut the presumption, which was raised by the testimony of claimant's husband, that the splinter had existed for some time, and that the State had constructive notice of the condition of the board.

The unexplained failure of a party to call a witness in his employ is a circumstance from which the inference may be drawn that the testimony would be unfavorable to the employer, according to 53 Am. Jur. Tr., Sec. 475. This principle is applicable in Illinois, as set forth in the case of *In re Sandusky's Estate,* 321 Ill. App. 1, 52 N.E. 2d 285, where the court declared:

"When neither party calls an available witness, whatever presumption will be indulged in from the failure to call such witness will be against the party to whose interest such witness would most likely incline, and failure to produce such witness is, in such case, a proper subject of comment. *Zimmerman* vs. *Zimmerman,* supra." (P. 291 N.E. 2d.)

There was no evidence that the carpenter foreman, who had allegedly inspected the ramp, was not in the employ of respondent at the time of the hearing. It is difficult to understand respondent's failure to attempt to rebut the inference of notice by calling the carpenter foreman as a witness, or to explain why he was not called.

In the case of *Kenney, Admr.,* vs. *State of Illinois,* 22 C.C.R. 247, where a tree limb fell from a diseased tree, killing claimant's intestate on the State Fair Grounds, the Court held that it was respondent's duty to make a proper inspection in order to safeguard the patrons at the State Fair. The Court also declared:

"It was the duty of respondent to keep the State Fair Grounds and the buildings thereon in a condition reasonably safe for the use of those attending the Fair, and it was obliged to use ordinary or reasonable care to accomplish this. Claimant's intestate was entitled to rely on or assume the proper performance of this duty. A violation of such a duty constitutes negligence."

There is no evidence to justify a conclusion that claimant was contributorily negligent. She apparently held onto the railing provided by respondent for as long as possible. However, for some unexplained reason, the railing ended about two and one-half feet before the bottom of the ramp was reached. It was in this unprotected area that the accident occurred. It appears that respondent should have, as a reasonable precaution to prevent falls such as the one suffered by claimant, provided a handrail in a place where there was still an incline. The crack was not readily apparent to those descending the ramp. As the Court stated in *Blue* vs. *St. Clair Country Club,* 7 Ill. 2d 359, "where a person invites another upon his premises, the law imposes a duty upon that person to exercise reasonable care for his visitor's safety, and to warn the visitor of any defects, which are not readily apparent . . . this applies not only to known defects, but also to those conditions, which could have been known had the landowner used reasonable care."

Respondent suggests that the nature of claimant's shoes, and prior activities of walking a mile and sitting in the rain show that she was not in the exercise of due care and caution for her own safety. Claimant testified she was accustomed to wearing the shoes, and her activities prior to the accident have no bearing on the issue of whether she was exercising care at the time of the accident. There is no evidence to show that Mrs. Welch should have been aware of the defect, since she had gone up the opposite side of the ramp, and the splinter did not extend that far.

The remaining question is one of damages. Claimant testified that she was the owner of a thirty-five room hotel, and did the maid work at the hotel. She was not able to resume her regular duties at the hotel after the accident. She was in bed for three weeks, and wore a sling for three more weeks. She had taken seven physical therapy treatments. She is not able to do all the work, which she did at the hotel, although she can do some things such as dusting. She further testified that she suffers pain almost all the time, and cannot now drive a car, although she did drive before the accident.

Dr. Noah Koenigsberg, claimant's doctor, who describes himself as an internist, who does not treat fractures, testified that claimant suffered a fracture of the distal end of the right humerus, called the knob on the shoulder. He last examined her on January 14, 1963. At that time claimant complained of pain in the shoulder area, and was unable to hold objects in her right hand because of lack of muscular power. Examination revealed muscle atrophy in the right arm, and less than 50% motion in all directions. She has a discoloration in her right hand, which is due to the injury. Her shoulder muscle is described as atrophied from lack of use, but Dr. Koenigsberg expressed his doubt that the arm would recover entirely even if used. He could not venture an opinion as to permanency.

Dr. Basilius Zaricznyj, apparently an orthopod specialist with the Springfield Clinic, in a report dated December 6, 1961, described the fracture as "well-healed", and she "should regain normal motion in the right shoulder." He recommended exercise and physical therapy.

Claimant's medical bills amounted to $302.75.

Claimant is hereby awarded the sum of $3,500.00.