(No. 81-CC-2065–

LORETTA F. NOLAN, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 3, 1983.*

*Order on denial of rehearing filed October 24, 1983.*

STANLEY L. MORRIS, for Claimant.

NEIL F. HARTIGAN, Attorney General (SUE MUELLER, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

This matter comes before the Court upon motion of Claimant for default judgment. Claimant's motion for default judgment relies upon Rule 18 of the Rules of the Court of Claims. Briefs have been submitted by both Claimant and Respondent.

Claimant's motion for default judgment sets forth that Claimant filed her brief in the instant cause on October 15, 1982, and under Rule 18 of the Rules of the Court of Claims, Respondent's brief was due no later than 60 days after Claimant's brief was filed, unless an extension of time for filing such brief had been requested and granted, which was not a fact in the present case. Under Rule 18, the brief of Respondent was due on December 15, 1982, but was not filed until after Claimant's motion for default judgment on June 22, 1983. Respondent finally filed its brief on July 6, 1983.

Claimant is correct in its interpretation of the rules that Respondent was negligent in not responding in the time required by Rule 18. The Court is of the opinion, however, that the fact that Respondent did not file its brief within the time set forth in the rules does not create a situation where it is mandatory for the Court to enter a judgment in favor of Claimant. It is the position of the Court that all of those matters should be taken into consideration in entering its final order.

The facts in this case, briefly, are as follows. On

September 24, 1979, Loretta Nolan, Claimant, was attending a meeting in Springfield for her employer, which is a teachers union and not an agency or department of the State of Illinois. This union was apparently holding committee meetings and some of the meetings were in the Stratton Office Building, Springfield, Illinois.

Claimant testified at the hearing on September 16, 1982, that she did not have a meeting in the Stratton Office Building, but was walking her friend up to the dark building to make sure there was a way for her friend to get into the building. Claimant testified she first tried the door on the right hand side of the building and, when that door did not open, she and her friend walked across the patio, or porch, of the building to the door on the left. While approaching that door, she tripped over a handicapped ramp and injured her ankle. She further testified she had not been to Springfield before and was not familiar with the Stratton Office Building. She testified she was walking at her normal pace which was a pretty good pace and that she was not looking down at her feet at the time she fell. She stated the area in question was completely dark.

Mr. Joe Kohorst, division chief under the Secretary of State for the department of physical services, testified as to maintenance and construction of the area in which Claimant fell. He testified the building was lit by recessed lighting fixtures and that they were spaced with approximately 25 feet centers. There were two sets of lights immediately over the handicapped ramp, and each contained 150-watt light bulbs. Those lights had been installed in 1953 and were the same lights in place in September 1979. Mr. Kohorst testified that the west portico of the Stratton Office Building has two sets of double doors, one at the north end and one at the south end. Both of these doors were identical. Both had paraplegic ramps in 1979.

The ramps in question were described as being "made up of bituminous material, give or take a few inches, six foot wide, seven and one half feet long, and the highest point of five and a half inches to the door entrance was up with the lowest step and tapers down to zero inches."

It is a requirement for State buildings to have these handicapped ramps, and their purpose is to allow handicapped people to enter the Stratton Office Building. Mr. Kohorst further testified that it was not unusual to find these ramps at State buildings.

There were not any handrails on the ramps in question at the time of the accident, and there apparently were no standards for the use of such handrails at the time the ramps were built.

Prior to September 24, 1979, Mr. Kohorst had not received any complaints concerning the sufficiency of the lighting in this area and he is the person to whom such a complaint would have been made. He testified that prior to September 24, 1979, there had been no complaints of injuries because of insufficient lighting or because of the ramp in this area. He testified that the ramp had been performing adequately prior to September 24, 1979.

Mr. Kohorst further testified that at the present time when handicapped ramps are constructed, there is a requirement that there be a handrail. He testified that the lights on this porch or portico are turned on manually from a main switch panel, that they are supposed to be turned on at sundown and turned off at 9:00 p.m., and that he did not know if the lights were turned on the evening of the accident.

The testimony of Claimant is that she did not have a

meeting in the building where the accident occurred but that she was escorting a friend to this building where the friend had to attend a meeting. Claimant was on the premises of the Stratton Office Building for the purpose of seeing that her fellow delegate and officer of the Illinois Federation of Labor safely gain access to the building for a meeting.

Claimant was, in that situation, an invitee. The duty of the State to an invitee is reasonable care and to warn of any defects not readily apparent as contrasted to the duty of the State to a licensee, a mere visitor to the premises, which is simply not to wilfully or wantonly injure the licensee. *Welch v. State* (1964), 24 Ill. Ct. Cl. 498; *Burris v. State* (1963), 24 Ill. Ct. Cl. 282.

The question therefore as to the liability of Respondent is whether the State was negligent in constructing the ramp for the benefit of paraplegics who might need the ramp to get into the Stratton Office Building and whether such a ramp was in itself an act of negligence that would create liability on the part of the State.

The fact that this ramp had been in existence since the construction of the Stratton Office Building, which was at least 16 years prior to the date of the accident, supports the Respondent's position that the ramp in itself is not a negligent act on the part of the Respondent. The fact that in all these years there have been no accidents reported in the use of the ramp strengthens Respondent's position that such a ramp is not an act of negligence.

This Court has repeatedly held that the State is not an insurer against accidents that may occur by reason of the condition of a State highway. (*Bloom v. State* (1957), 22 Ill. Ct. Cl. 582, 584.) The same rule is applicable to sidewalks maintained by the State. The State has a duty to exercise reasonable care in the maintenance of its

highways so that dangerous conditions likely to injure persons lawfully there shall not exist. *Sewell v. Board of Trustees of Southern Illinois University* (1979), 32 Ill. Ct. Cl. 430, 433.

This Court has also held on many occasions that for Claimant to recover damages arising from defects in the roadway (or sidewalks), the Claimant must prove the State was negligent and that such negligence was the proximate cause of the injury. This Court has also held that in order for Claimant to recover she must prove that the State had actual or constructive notice of the defect that caused the injury. *Weygandt v. State* (1957), 22 Ill. Ct. Cl. 478, 485.

The record in this case is completely devoid of any actual or constructive notice of any defect in the area where the accident took place. The mere fact that a ramp had been built for the convenience of that part of the public that had need of such a ramp did not, in the opinion of the Court, constitute a defect that would make the State responsible for the accident such as the one in this case.

Claimant has suggested that a handrail on the ramp in question would probably have prevented the accident that occurred. That is pure conjecture and the fact that handrails were not required at the time of the construction of the building is a strong indication that such an item was not necessary.

This Court has held on many occasions that before recovery can be had, Claimant must prove the State had actual notice of a defect in the roadway (or sidewalks), or in a case of constructive notice, each case must be decided on its own facts. In the present case, Claimant has not proved that a dangerous condition existed or that

the State had knowledge or should have known of any dangerous condition. There had been no previous accidents involving the ramp even though it had been in existence for a number of years. (See *Sewell, supra,* at 433.

It is the opinion of this Court that Claimant's motion for default judgment should be denied and Claimant, having failed to show there was negligence on the part of Respondent, should be denied an award.

Case dismissed.

## ORDER ON DENIAL OF REHEARING

HOLDERMAN, J.

This matter comes before the Court upon petition of Claimant for rehearing and objection to said petition by Respondent.

Claimant, in her petition for rehearing, states that the Court failed to consider the effect of the absence of lighting at the scene of Claimant's injury. The Court, in its opinion of August 3, 1983, referred to the lighting conditions and is of the opinion that its dismissal of this cause is correct.

It is hereby ordered that Claimant's petition for rehearing be, and the same is, denied.