(No. 91-CC-0557–■■■■■■■■■■■■■■

NORMAN DALE SLOAN, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed September 5, 1995.*

*Order on petition for rehearing filed November 16, 1995.*

WOMACK & ASSOCIATES (MARK A. ATKINS and GENE A. TURK, of counsel), for Claimant.

JIM RYAN, Attorney General (DAVID RUMLEY, Assistant Attorney General, of counsel), for Respondent.

## OPINION

RAUCCI, J.

Claimant is a handicapped person who was present at the DuQuoin State Fairgrounds property on September 3, 1989. Claimant's motorized wheelchair struck a pothole in a roadway and Claimant was caused to fall when the chair tipped over. Claimant contends that he sustained a traumatic injury to his buttocks which, due to his paralysis, did not heal properly, and for which the Claimant received considerable medical attention and hospitalization.

At the time of the accident, Claimant was accompanied by his brother-in-law, John Nelson. Claimant was in a scooter type vehicle. They walked (rode) through the gate and were sightseeing while traveling down a fairgrounds road. It was twilight and vehicles did not have headlights on. Two golf carts were coming down the road and Claimant and Nelson moved to the right side of the road. Nelson was walking to the left of, and ahead of, Claimant. Nelson was talking to Claimant and when he did not get an answer from Claimant, he turned to discover that Claimant's wheelchair had turned over on the right and Claimant was half in and half out of the wheelchair.

The accident happened on a road area by the stables. The accident happened in the middle of the block. With the help of some concession campers, Nelson got Claimant back into his wheelchair and turned him upright. An ambulance was called. Claimant was upset, had sustained scratches and scrapes, and was embarrassed. The emergency medical technicians (EMTs) with the ambulance examined Claimant but did not examine his lower torso. They left the scene. Claimant did not leave in the ambulance.

Nelson and Claimant continued traveling around the fair and met with their wives and looked around the fairgrounds. About an hour after the incident, Claimant began complaining of pain in his butt area. Nelson stated that Claimant was "starting to sweat."

On cross-examination, Nelson testified that the roadway was an asphalt type paved surface with curves "in parts of it." Nelson did not recall a curve at the location of the accident. The margin between the edge of the paved area and the unpaved area was ragged where the pavement "had chunks out of it." Nelson looked at the road briefly after the accident and observed that it was rough.

Nelson was asked the following questions and gave the following answers:

"Q. Okay, now, you use the word 'pothole,' I think in your testimony. Was there a hole near the area where you saw Mr. Sloan come out of his scooter?

A. There was not—I am talking about the edge of the road didn't have holes; it had areas that were out.

Q. Okay.

A. But the road itself toward the edge had potholes in it.

Q. Did you look at the road after you saw Mr. Sloan on the ground?

A. Just briefly.

Q. Did you see anything that could have caused him to come out of the chair?

A. The road, you know, was all I could see was rough.

Q. And you mean 'rough' by an uneven surface?

A. A jagged surface where the asphalt has—the side of the road where it falls off, you know." (R-29-30)

Nelson testified that at the area where Sloan came into contact with the pavement there was small gravel. Nelson did not see any particular pothole that Nelson felt caused the scooter to tip over. There was a jagged edge but there were no potholes on the side.

After the accident, Nelson, Claimant and members of their family stayed at the fairgrounds until midnight.

The accident happened as the Claimant and Nelson went from the gate after parking their vehicle. On examination by the Commissioner, Nelson testified that he did not observe any particular condition in respect to the rough edge of the road that he thought might have caused Claimant to fall, but just the general condition of asphalt breaking away from the edge of the road.

Claimant testified that he had been in incomplete quadriparesis since 1975, and had been confined to a wheelchair. At the time of the accident, he was operating a Rascal scooter that he had for three years. This is a specialized

piece of equipment that Claimant used to go deer hunting. The scooter was in good working condition at the time of the accident. Claimant testified that as he and Nelson left the parking lot it had rained and there were a lot of holes and ruts in the parking lot itself which gave Claimant no problem. Claimant was able to negotiate the cornfield and had no problem getting to the paved area.

The roadway that Claimant was operating his scooter on was asphalt and Claimant did not pay particular attention to it. From the gate into the fairgrounds where the accident happened would have been about 100 yards or a little more than that. The road was straight.

Claimant testified that the photograph marked as plaintiff's exhibit #4 revealed the location where he tilted over "in front of this horse buggy." The horse buggy was not there but the photograph fairly and accurately represents the condition of the area because it was filled up with water at the time of the accident.

At the time of the accident, Claimant testified there were "thousands of people walking west" because that was the route to get into the fair. Claimant testified that one of the back wheels of his scooter hit a pothole or a hole. Claimant was going slow because his brother-in-law, Nelson, was walking next to him. Claimant was proceeding at a walking pace. Claimant felt the scooter lean over and he was flipped or thrown completely out. The surface Claimant fell on was loose gravel. Claimant saw a hole that had been filled up with gravel that was two or two and one-half feet in diameter. The hole was not perfectly circular. Claimant testified the hole was deep enough to cover up a ten-inch wheel.

Claimant contends that the Respondent breached its duty to Claimant as an invitee and asserts that Respondent, as a property owner, must use reasonable care and

caution to maintain its premises in a reasonably safe condition for the use of its invitees, and to warn of any defects that are not readily apparent. Claimant cites *Ratts v. State* (1986), 38 Ill. Ct. Cl. 183. In *Ratts*, Claimant, an A.B. Dick Printing Press repairman, was called to the offices of the Department of Transportation to fix a printing press. While there, the Claimant testified he was working on the machine and asked one of the department's employees to "run another master on the camera." The employee testified that he thought the Claimant had told him to "run more copies" and that after turning on the machine for the purpose of running more copies, the employee heard a funny noise and turned to find that Claimant's hand had been injured. The testimony of the Claimant and the employee of the Department of Transportation were in direct conflict. This Court stated that the State was not an insurer of the safety of invitees, but must only exercise reasonable care for their safety. (*Fleischer v. State* (1983), 35 Ill. Ct. Cl. 799.) The burden is upon Claimant to prove, by a preponderance of the evidence, that the State breached its duty of reasonable care. (*Ratts, supra,* at 185.) Under the circumstances extant in the *Ratts* case, this Court denied the claim and held that the Claimant had failed to prove that the State had breached its duty of reasonable care and that the Court could only speculate as to how Claimant's injury had occurred. Claimant cites *Nolen v. State* (1983), 36 Ill. Ct. Cl. 194. In *Nolen*, Claimant was walking with a friend near the Stratton Building in Springfield, and while walking across the patio approaching a door, she tripped over a handicapped ramp and injured her ankle. She testified the area was dark and she was unfamiliar with the area. State employees testified that they had not received any complaints concerning the sufficiency of the lighting in the area and there had been no complaints of injuries due to insufficient lighting or because

of the existence of the handicapped ramp in the area. This Court held that the Claimant in *Nolen* was an invitee, and that the State had a duty to use reasonable care and warn its invitees of defects not readily apparent. This Court observed that the ramp had been in existence for sixteen years, that there had been no accidents, and that the State is not an insurer against accidents that may occur by reason of the condition of a State highway. In *Bloom v. State* (1957), 22 Ill. Ct. Cl. 582, 584, the Court held that the same rule is applicable to sidewalks maintained by the State. The State has a duty to exercise reasonable care in the maintenance of its highways so that dangerous conditions likely to injure persons lawfully there shall not exist. In *Sewell v. Board of Trustees of Southern Illinois University* (1979), 32 Ill. Ct. Cl. 430, 433, we observed that the Court had held on many occasions that in order for a Claimant to recover damages arising from defects in the roadway (or sidewalk), the Claimant must prove the State was negligent and that such negligence was the proximate cause of the injury. This Court has also held that in order for Claimant to recover, Claimant must prove that the State had actual or constructive notice of the defect that caused the injury. See *Weygandt v. State* (1957), 22 Ill. Ct. Cl. 478, 485.

The record in this case is completely devoid of any actual or constructive notice of any defect in the area where the accident took place, with the sole exception of Claimant's testimony that a hole existed and that the hole caused his scooter to tip over. Even Claimant's brother-in-law, Nelson, did not testify to the existence of a "hole" at the area of the accident, but only as to an uneven surface along the edge of the paved portion of the asphalt road where pieces of asphalt had broken away. Two employees of the State familiar with the condition of the roads on the DuQuoin Fairgrounds testified that there were no holes of

the type described by Claimant in the area where Claimant contends he was injured. Even if one were to assume that the Claimant was correct that a hole did exist of the size and dimensions stated by Claimant, the mere existence of such a hole does not establish either actual or constructive notice to the State of the existence of this condition.

In *Cotner v. State* (1987), 40 Ill. Ct. Cl. 70, Claimant brought a tort action against the State claiming that he was riding a motorcycle on a State-maintained road when he went over a bump, losing control and falling to the pavement receiving severe injuries. A companion cyclist testified that the bump was six inches high and that a year earlier he had run over the same bump and it jarred his tape player so that the tape fell to the ground. The Claimant's companion never complained about the bump and never notified the Illinois Department of Transportation. An investigating police officer found the bump and estimated that it was approximately four inches high. Claimant's father measured the bump at 4 and 3/4 inches high. An IDOT field technician estimated the height of the bump as between 1 and 3 inches. Department of Transportation personnel testified that they made visual inspections of the area and did not see such a bump. Local police departments had not received public complaints and no IDOT agency employees reported any deficiency in the road surface. This Court held that Respondent was not an insurer of the safety of users of its highways. The burden is upon Claimant to show that the State had actual or constructive notice of defects that caused injuries. (*Norman v. State* (1982), 35 Ill. Ct. Cl. 693, 695.) "The mere fact that a defective condition existed if, in fact, it did exist, is not in and by itself sufficient to constitute an act of negligence on the part of the Respondent." *Palmer v. Northern Illinois University* (1964), 25 Ill. Ct. Cl. 1; *Cotner v. State* (1987), 40 Ill. Ct. Cl. 70, 72.

In the case at bar, as in *Cotner, supra,* the State conducted investigations of the roadway in question on a regular basis. No defects were observed. No complaints were received. According to the record in this case, the accident which injured Claimant represents the only reported accident at this area of the roadways on the DuQuoin State Fairgrounds. In *Cotner, supra,* there was evidence from Claimant's companion of the existence of the bump one year earlier, but this Court held such evidence to be insufficient to establish constructive notice of the existence of the bump, or of a dangerous condition. There is no serious contention that Claimant's buttocks were not injured and that he has not had severe problems in obtaining a complete healing of the area over a long time after he fell from his scooter. The issue is whether the Respondent can, on the basis of the evidence adduced at trial in this case, be held accountable for allowing an unreasonably dangerous condition to exist which proximately resulted in Claimant's injury. There is simply no evidence whatsoever that Respondent had actual or constructive notice of this allegedly dangerous condition. Indeed, the testimony of Claimant's brother-in-law, who was present at the time of the accident, simply does not confirm the existence of this rather large pothole or hole as described by the Claimant in Claimant's testimony. To the contrary, the brother-in-law's testimony was only to the effect that the edges of the asphalt's surface on the road were uneven or jagged where pieces of asphalt had broken off. This testimony alone certainly does not establish the type of unreasonably dangerous condition which must be shown in order for Claimant to recover.

Counsel for Claimant argues that Claimant presented a *prima facie* case that the Respondent's premises were unsafe. We do not agree. Counsel alludes to Claimant's testimony. That testimony established that after the accident,

Claimant observed the roadway where he fell. Claimant said he saw a hole that had been filled up with gravel. The hole was maybe two feet or two and one-half feet in diameter and was not perfectly circular. Claimant testified that the wheels on his scooter were ten inches and the hole "covered the wheel up" so that the wheel was completely underneath the surface of the hole. Counsel for Claimant argues that this testimony was confirmed by the brother-in-law, John Nelson. Nelson's testimony was, in pertinent part, that after the accident, the scooter was off the side of the road. Nelson was asked if he saw any particular pothole that he felt had caused the scooter to tip. Nelson replied that "these weren't potholes on the side. This was a jagged edge * * *." Thus, counsel's conclusion that Nelson's testimony confirmed the testimony of Claimant is not correct. Counsel also alludes to the testimony of EMT Brumley. Brumley was the EMT who arrived with the ambulance. Brumley's testimony was that he had absolutely no recollection of the incident, but identified his report. The report attached as exhibit #1 to the Brumley deposition does not allude in any way to the cause of this accident, but recites only that the Claimant had fallen out of his wheelchair. Counsel's conclusion that Brumley's deposition testimony lent weight to the conclusion that Respondent's premises were not reasonably safe is misplaced. The only evidence of what might be perceived as a dangerous condition which proximately caused the Claimant's injuries came from the Claimant's testimony alone. There was no corroboration of the existence of the dangerous hole, even through the testimony of Claimant's companion present at the time of the accident. Nevertheless, if this Court accords Claimant's testimony sufficient weight to establish the existence of the pothole, there remains no proof whatsoever that Respondent had actual or constructive notice of the condition.

It is therefore ordered, adjudged and decreed that this Claim is dismissed and forever barred.

## ORDER

RAUCCI, J.

This cause coming on to be heard on the Claimant's petition for rehearing and/or for new trial, the Court being fully advised in the premises, the Court finds: the petition for rehearing should be denied.

It is therefore ordered that the Claimant's petition for rehearing is denied.