(No. 4518—

EFFIE LINDBERG, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed July 23, 1954.*

ARNDT AND WINGARD, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; MARION G. TIERNAN, Assistant Attorney General, for Respondent.

WHAM, J.

This is an action brought by claimant, Effie Lindberg, against respondent, State of Illinois, to recover

$7,500.00 in damages for personal injuries, which she sustained on June 25, 1950, when she slipped and fell upon the concrete floor of a women's lavatory located in the Mississippi Palisades State Park, which is owned and operated by respondent, State of Illinois. The accident occurred while she was attending a church reunion, as a member of the Reorganized Church of Jesus Christ.

Claimant charges in her amended complaint, filed herein, that respondent leased a portion of said State Park to the Reorganized Church of Jesus Christ for the period from June 24, 1950 to July 2, 1950. A women's lavatory was situated on said leased premises, which had a smooth concrete floor sloping in all directions toward a drain, which was countersunk in approximately the center of the floor. Claimant further charges that the lavatory was defectively constructed, and, on June 25, 1950, the concrete floor was moist, wet and slippery, and, therefore, dangerous, all of which respondent either had, or by the exercise of reasonable diligence, could have had notice of said condition in time to remedy the same. The amended complaint further charges that on June 25, 1950 claimant, as an invitee of respondent's lessee, was present in said park, entered the lavatory, and, in making her departure therefrom, was caused to slip and fall, because of the above mentioned dangerous condition, and without any fault on her part. As a result of said fall, claimant sustained a broken hip, which has resulted in permanent injuries, necessitating the expenditure of large sums of money for medical and hospital expenses, for which she asks $7,500.00 damages.

Respondent has filed a general denial to all of said allegations, and further charges in its answer that the Reorganized Church of Jesus Christ, as lessee of respondent, had assumed responsibility for the mainte-

nance of the premises, and, therefore, any negligence, other than that of claimant, contributing to her fall, was that of the lessee.

Although the question of the status of claimant, as raised by respondent, is one of interest, it will not be necessary to consider it, for the reason that, even assuming respondent owed claimant the duty to exercise ordinary care to keep the premises in a reasonably safe condition, which question, however, we do not decide, claimant has failed to bear the burden of proving her case against respondent on this theory, i.e., the one most favorable to claimant.

The facts concerning the accident, as shown by the evidence, are as follows: On June 24, 1950, claimant, a widow, 68 years of age, and a resident of Mathersville, Illinois, went to the Mississippi Palisades State Park, as a member of the Reorganized Church of Jesus Christ, for a church reunion. The women's lavatory in question was located on the camping site, which the Reorganized Church of Jesus Christ was occupying with the permission of the State of Illinois. Claimant's exhibit No. 2, being a Departmental Report of the State of Illinois, which was offered in evidence by both claimant and respondent, contains photographs portraying the exterior and interior of the lavatory, the inside measurements of which were 9'6" by 7'6". The floor was constructed of smooth cement trowel finish with a drain 9" in diameter located in the center of the floor, and with a 2" taper in the floor from the outside walls to the drain. There were two windows on the south side of the lavatory, and one on the east side. Along one side of the lavatory were six toilet stools, and at the opposite end from the doorway opening into the lavatory were located two wash basins. Claimant testified that she had entered

and used the lavatory on June 24, 1950, and did not remember whether the floor was wet or dry on that date; and, that she and a Mrs. Wakeland entered the lavatory at approximately 8:00 A. M. on June 25, 1950. Mrs. Wakeland then left the building, and waited for claimant, while she went to the lavatory, and washed her hands. She further testified that at the time there were several girls, women and little children in said lavatory, the stools were occupied, the wash basins were being used, and a total of approximately 8 or 10 persons were standing against the wall opposite the stools. She used one of the stools, and then washed her hands at one of the wash basins. After washing her hands, she started to walk back toward the door. She stated that the floor was wet, and that, as she walked along, she was talking, but watching her steps carefully. Suddenly her foot slipped. She tried to catch herself, put her hand out, and then fell to the floor, as a result of which she sustained a fracture of her hip. She stated that she slipped on the wet floor, and fell at the drain; that the floor was damp all over. She further stated that, although the light was not burning in the lavatory at the time, it was daylight, and the view was good within the room, and she had no trouble seeing the floor. She stated that, when she entered the lavatory, she was looking at the floor, and saw moisture covering it, which appeared to be caused from condensation. She stated that no one jostled or pushed her, and that she did not notice any foreign substance upon the floor; that it was clean in all respects. She further stated that there was no standing water on the floor, but only moisture. Her testimony concerning the condition of the floor was borne out by Mr. Edward R. Williams, an official of the church organization, who went into the lavatory after he was

notified that claimant had been injured. Mr. Orville C. Short likewise testified to basically the same facts. Mrs. Wakeland, who had gone to the lavatory with claimant, stated she did not see Mrs. Lindberg fall, as she had waited outside the lavatory while Mrs. Lindberg washed her hands. She also testified that the floor was wet, but clean, with no foreign substance on the floor; and further stated that she had no trouble seeing the floor, as the light was good. All of the witnesses testified that on the previous day, that is, June 24, there had been a cloudburst, and that on the morning in question the weather was hot and humid outside, yet cool and comfortable inside. The witnesses further stated that the wet condition of the cement floor was or could be due to condensation arising from the temperature and humid conditions.

It is our considered opinion that the record in this case does not show any negligence on the part of respondent, nor the existence of a dangerous condition in the lavatory. There is no evidence in the record establishing that the manner of construction was other than the usual and ordinary type used for a lavatory located in a park. The only complaint made concerning the condition of the floor was that it sloped slightly, was of smooth concrete construction, and was wet and slippery. From claimant's brief and argument, it appears that claimant relies upon this fact, contending that the floor became slippery because of condensation, of which condition respondent knew or should have known. It is to be noted that nowhere in the record is there any evidence or argument offered by claimant showing, or tending to show, what, if anything, respondent should have done to avoid the condensation, or what other type of construction and

design should have been used. This Court should not, and will not speculate upon this question.

It is further to be noted that there is no evidence to the effect that any of the persons, who were likewise using the lavatory at the time in question, and particularly claimant's witnesses, Mr. Williams, Mr. Short and Mrs. Wakeland, slipped, or had any difficulty in walking upon the floor of the lavatory.

The mere fact that the floor was sloping, wet and slippery does not in and of itself constitute a condition, which in the eyes of the law is a "dangerous condition".

In the case of *Miller* vs. *Gimball Bros., Inc.,* 262 N.Y. 107, 186 N.E. 410, the Court, in reversing a recovery of a plaintiff, who slipped on a wet, sloping entrance way constructed of Tennessee marble, said:

"We may assume that rainwater may make the smooth sloping floor somewhat more slippery than if the floor were dry. None the less, it does not appear that the floor, even when wet, was dangerous."

If the condition of the lavatory, as shown by the evidence in the instant case, was considered to be such as to justify a recovery herein, the burden of maintenance would be so great that respondent would become an insurer of those using like lavatories in State Parks when the floors were wet.

In *Carlson* vs. *United States,* 90 F. Supp. 159 at 160, under the Federal Tort Claims Act, the court stated:

"The court is of the opinion that, although plaintiff has sufficiently proved that the floor was wet and somewhat slippery, she has failed to show either negligence on the part of the defendant or lack of contributory negligence on her own part. The owners or operators of buildings where the public is invited to come on business are not insurers against all forms of accidents that may happen to any who come. 'If what was shown in this case was sufficient to permit recovery, it would require store owners to have a mopper stationed at the doors on rainy days for the sole purpose of mopping up after every customer entering or leaving the premises. Every store owner would be re-

quired to be an insurer against such accidents to public invitees who came in on rainy days with wet shoes.' *Sears Roebuck & Co. vs. Johnson,* 10 Cir., 91 F. 2(d) 332, 339."

It is fundamental that respondent is not an insurer of the safety of the patrons of the park, and, at the most, can only be held to that degree of care, which a reasonably prudent individual or organization would use in constructing and maintaining a like structure in a like location, under the same and similar circumstances. It is likewise fundamental that the burden of proof is upon claimant to establish negligence on the part of respondent, as well as her freedom from contributory negligence, before recovery can be had. In our judgment, claimant has not borne this burden of proof.

It is clear from the evidence, and particularly from claimant's own testimony, that the very condition complained of was as apparent to claimant, as it would have been to any agents or servants of respondent had they been present. She, therefore, should be held to as high a degree of care for her own safety, as would be required of respondent in its conduct toward her. She should also be held to have assumed whatever risks were involved in going upon the wet floor, which were within themselves an incident to such act. There was no hidden danger. She was completely cognizant of the condition of the floor. The case, it seems to us, does not present a different situation in this regard than do those cases wherein a slippery condition on the floor of a building has been brought about by rainfall. The law of Illinois is well settled in those cases wherein the person injured had as much knowledge of the condition as the owner of the store or building.

In the case of *Murray* vs. *Bedell Company of Chicago,* 256 Ill. App. 247, an invitee slipped in the lobby of

the store, and sustained injuries as a result of her fall. There was mud and water on the floor, which created a slippery condition. In reversing the judgment for the plaintiff in the trial court, and entering judgment in favor of the defendant, the Appellate Court stated at pages 249, 250 and 251:

"From the testimony of the plaintiff it is apparent that the danger, if any, was clearly evident to her, as well as the defendants, and that she was aware of the condition and of the possibility of sustaining a fall before she undertook to pass over and along the floor space of the vestibule.

The condition described by the witnesses is one that is not only not unusual, but is customarily to be found on such days as described in the testimony, in vestibules of this character and the sidewalks and the premises surrounding entrances to public places.

\* \* \* \*

In the case at bar the plaintiff was as well apprised of the condition existing in the vestibule as the defendant, and should be held to as high a degree of care for her own safety as would be required of the defendant."

The court, in arriving at its decision, quoted at length in its opinion from a similar case, *Kresge Co.* vs. *Fader*, 116 Ohio St. 718:

" 'It is a fact known to all that many stores in all branches of trade have an inside door or passageway into the store, usually in the middle of the front. On each side of this passageway is a display window. The passage then extends back ten or twelve feet or more to the entrance door to the store. This passage usually has a slight slope from the door to the sidewalk, at which line there is no door. This slope is to carry away the rain that may blow into the passageway. The passageway is in fact practically a part of the sidewalk, but at the same time it is within the front line of the store, and under control of the store. Would anyone contend that, if a person walked into such passageway when it was raining, and there slipped and fell, he could recover damages because there was moisture on the floor of the passageway? Manifestly not. Everybody knows that, when people are entering any building when it is raining, they will carry some moisture on their feet, which will render the floor near the door on the inside damp to some extent, and every one knows that a damp floor is likely to be a little more slippery than a dry floor.

\* \* \* \*

Owners or lessees of stores, office buildings, banks, hotels, theaters, or other buildings where the public is invited to come on business or pleasure, are not insurers against all forms of accidents that may happen to any who come.' See also *Dudley* vs. *Abraham*, 107 N.Y.S. 97."

*Murray* vs. *Bedell Co., supra,* has been followed by the Circuit Court of Appeals of the Seventh Circuit, in *Brunet* vs. *S. S. Kresge Co.,* 115 F. 2(d) 713, a similar case wherein the court arrived at a like result. In *Carlson* vs. *United States,* 90 F. Supp. 159, the court stated at page 160:

"Plaintiff herself testified that it had been raining all day, and that the sidewalks and streets were wet. With those facts in her possession, she was certainly apprised, or should have been, of the likelihood of the floor inside the Post Office being wet, and of the possibility of sustaining a fall as a result thereof. The case at bar comes squarely within the purview of the facts and the law as announced in *Murray* vs. *Bedell Co. of Chicago,* 256 Ill. App. 247."

The court's decision in *Murray* vs. *Bedell Co., supra,* is further followed in *Clark* vs. *Carson Pirie Scott & Co.,* 340 Ill. App. 260.

Professor William L. Prosser in his handbook, *Prosser On Torts,* at page 384, recognizes the rule that "One who enters upon the premises of another, even as a business visitor, assumes the danger of all known or obvious conditions, which he finds there".

The court in *Dargie* vs. *East End Bolders Club,* 346 Ill. App. 480 at 490, recognizes the same rule:

"An 'invitee assumes all normal, obvious or ordinary risks attendant on the use of the premises.' (65 C.J.S. Neg., Sec. 50, pp. 542, 543.)"

In *Mack* vs. *Woman's Club of Aurora,* 303 Ill. App. 217, a case involving a woman, who slipped upon a waxed floor, the Appellate Court, in reversing a trial court judgment, stated at page 220:

". . . Whatever risks were involved with her use of the floor were obvious ones and such as were incident to each of her former visits to the club room, and common to every other member of the club. Under such circumstances, she must be held to have assumed any risks involved in her walking upon the floor, which were within themselves an incident to such act. There appears to have been no hidden danger."

Said case has been followed by this Court in *Anna Carrano* vs. *State of Illinois,* 18 C.C.R. 30.

Then, too, in addition to the above, there has been no showing that respondent knew, or, in the exercise of reasonable care, should have known that the floor was slippery at the time of the accident in question. The burden of showing such knowledge is upon claimant. She has failed to offer testimony establishing either actual or constructive notice of the alleged unsafe condition.

We, therefore, hold that claimant is not entitled to recover for the above reasons, and will not extend the opinion further by considering the other questions raised by respondent, or the question of damages. The claim is denied.