(No. 5403-

LILLIAN ROSS, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed February 18, 1971.*

JACOBSON, LIEBERMAN, LEVY AND BARON and HARRY B.
ROSENBERG, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; MORTON L.
ZASLAVSKY and BRUCE J. FINNE, Assistant Attorneys General,
for Respondent.

HOLDERMAN, J.

Claimant has brought action against the State of Illinois
to recover from damages allegedly suffered as a result of a
personal injury sustained on June 17, 1966, in The Starved
Rock State Park. The damages claimed are in the amount of
$25,000.00.

The complaint recites that on and prior to June 17,
1966, the State of Illinois maintained a certain foot trail and
stairway at The Starved Rock State Park leading from the
area behind the "Lodge" to a lower area.

It further recites that on said date claimant was visiting
The Starved Rock State Park. She had been and was there
at the invitation of the State of Illinois, and was a guest for
consideration at The Starved Rock State Park Lodge.

Claimant further contends that the stairway on said
premises, which was owned and maintained by the State of
Illinois, had for some time prior to the accident been

unlevel, so that it tilted forward creating a dangerous condition for persons using the said stairway.

Claimant also alleges that the State was negligent in failing to provide a proper hand rail, which could be held onto by a person using the stairway, and that the State had failed to inspect the stairway in time, prior to the occurrence claimed of herein, to learn of the unsafe condition of one of the steps of the said stairway. The State further failed to inform claimant and others of the unsafe condition of the said stairway, and repaired the said step as to leave it in an unsafe condition.

Claimant at the time of the accident was a retired woman, seventy years of age, who had been active in collecting spiders and insects. On the morning of the accident, she and her companions were starting on a hike from the Lodge at the Park. She was wearing shoes with heavy rubber corrugated soles and flat heels, and she started down the wooden steps leading from the upper part of the Park to the lower level. She is alleged to have stumbled on a broken step, and injured her left extremity as a result of the fall.

She was taken to St. Mary's Hospital in LaSalle where x-rays revealed a complete oblique fracture of her left femur. She was operated on, and the fractured fragments of the bone were fixed into position with the insertion of rush rods. She was discharged after two months confinement in the hospital.

After returning to Chicago, she was treated by another doctor, who rendered follow-up care.

Claimant testified that, as she was going down the steps, she fell on the second wooden step. She further testified that she tried to grasp the side railing, but it was too big for her to grasp, so she fell after her right foot slid, and finally landed with the left leg doubled up under her.

Her companion, Miss Cotterill, testified that she was present when the accident happened, and that the second step slanted downward and to the right, and that there was some sand upon the step.

Miss Cotterill further testified that a man came along immediately after the accident, picked claimant up, and straightened her leg out. She was then removed in an ambulance to the hospital. Miss Cotterill further testified that she stayed in LaSalle all during the period of time that claimant was confined to the hospital, and helped take care of her by bathing her, feeding her, and performing similar services.

A Park employee, Mr. John Baima, testified that these steps would be swept approximately once a week, which was necessary because of the accumulation of very fine sand. Mr. Baima further testified that the second step in question was tilted forward, and that he repaired the same by putting in a temporary brace, and also informed the Superintendent of the Park that the brace underneath the stairway had rotted away, and would need replacement. He stated that he did not see any signs or warnings that the steps were slippery. He also testified that before he put the brace in the step was a little loose and in not too good a shape. Part of the step had rotted away, including a piece of the brace holding the step.

The evidence seems uncontradicted that there was sand upon the step in question, and that the stairway, and particularly the step on which claimant is alleged to have sustained her fall was defective due to the slant, the sand, and the rotting away of part of the brace. The pictures introduced by claimant indicate that new material had been placed under the step after the accident in question.

The expenses testified to as a result of the accident are as follows:

St. Mary's Hospital $2,671.25; Dr. Doyle's bill $1,035.00; Dr. Sickley, one of the doctors in the hospital, who gave claimant care, $35.00; $12.00 for x-rays at The Michael Reese Hospital; $25.00 to Dr. Leonard Weinstein, for work and examination of claimant's leg; $10.00 leg x-ray at The Michael Reese Hospital; $12.00 leg x-ray at The Michael Reese Hospital; and $20.00 additional for Dr. Weinstein. These were claimant's expenses in 1966. In 1967, claimant had an additional $12.50 for x-rays on her leg at The Michael Reese Hospital; $48.00 to Dr. Irving Mack; $10.00 additional to Dr. Weinstein; another $12.50 for x-rays at The Michael Reese Hospital; and another $29.00 to Dr. Mack.

Claimant also testified that she paid Miss Cotterill, her companion who lived with her, and was on vacation with her, the sum of $493.62, which was the amount of expenses incurred by Miss Cotterill while she stayed in LaSalle during the period of time claimant was confined to St. Mary's Hospital.

It appears that claimant was exercising ordinary care for her own safety at the time of the accident. She had on corrugated rubber-soled walking shoes, and was attempting to use the rail on the stairway, but was unable to do so because of its size. Her fall was occasioned either by the sand on the step, the slant of the step, or a combination of the two circumstances.

We have carefully considered the record in this case, and the authorities cited by both parties. It is our opinion that this case, as far as the facts are concerned, corresponds greatly to two other cases, namely: *Alberta Hansen, Admr., Etc.* vs. *State of Illinois,* 24 C.C.R. 103, in which the rule was laid down that respondent has a duty to warn of a danger that exists along a trail; and *Elizabeth Ann Murray, a Minor, Etc.,* vs. *State of Illinois,* 24 C.C.R. 399, in which the rule that the State owes a duty to the public to exercise reasonable care in establishing, maintaining and supervising its parks is set forth.

It is our opinion that the dangers in the case were the rotted support of the step, and the slanting of the step, which could not be discovered except by minute examina-

tion, and the failure to warn claimant of this hazardous condition caused the result complained of.

In this case claimant was retired so there was not any loss of earnings, but we believe that she is entitled to recover for medical expenses and disability in pain and suffering, which occurred as a result of said accident. The Court, therefore, finds that claimant sustained damages in the amount of $12,000.00.

An award is, therefore, made herewith to claimant, Lillian Ross, in the amount of $12,000.00.