(No. 89-CC-3674— <span style="background:#000;color:#000"></span>)

LILY ARLENE HALL, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 19, 1991.*

*Order filed August 27, 1992.*

FEIRICH, SCHOEN, MAGER & GREEN, for Claimant.

ROLAND W. BURRIS, Attorney General (VERNE DENTINO, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

Claimant alleges that she was injured due to the negligence of the State when she fell down an unlighted stairway while leaving the grandstand at the DuQuoin State Fair on August 31, 1988. Claimant seeks damages in the amount of $100,000 for medical expenses and pain and suffering.

On August 31, 1988, Lily Arlene Hall, the Claimant,

and her three sisters attended the gospel sing at the State Fair at DuQuoin. Claimant drove from Carbondale to DuQuoin. She left home between 7:30 p.m. and 8:00 p.m. When she got to the fair, Claimant drove through the gate and parked in the parking lot. Claimant and her sisters then walked into the fairgrounds and went into the grandstand which had a free admission. They went through a double door into a room with a roof over it. They then went up two flights of stairs and sat in an area between sections F and J on Joint Exhibit 1, the seating chart for the grandstand. There were no ushers at the grandstand. When they arrived, the show had begun and the stage was lit up. They came onto the landing and went up approximately 12 rows, and sat down in the grandstand to watch the gospel show. There were no overhead lights on where they were sitting. There had been no intermissions while Claimant watched and overhead lights had never been turned on.

The four sisters stayed for approximately 45 minutes and then the Claimant decided she wanted to leave because her husband was not feeling well. The show was still going on. Only the stage lights were on. The Claimant and her sisters got up to leave and went out single file. The Claimant was third in line. They turned right and walked down and then back to the stairs. Claimant said she could not see the stairs. It was very dark in the stairwell. There were no lights on the stairs and no lights on the end of the seats; however, there was a bannister or railing. Claimant could not see where she stepped. She felt her way down with her feet, trying to feel the next step as she went. The steps did not feel uniform in size or shape. Suddenly Claimant fell full force on her left knee. Her knee made a cracking noise. She had no idea how many steps she had missed. Claimant and her sisters went

down the same stairs they had come up. Claimant could not get up after the fall. Her sisters helped her up and then down the stairs. None of the other sisters fell and the lighting in the stairway was about the same when they left as when they had come in. They went outside and got on a tram. The tram took Claimant to the front gate. Claimant's knee was starting to swell and she was in pain. A woman brought out a lawn chair for her to sit on and two sisters went to find a nurse or someone else to help. The sisters went to the Fair office. The sisters testified that the lady in the office advised them that there was an ambulance on the fairgrounds. The sisters said the lady in the office said it had been the intention to light the stairwells, or words to that effect.

Claimant was taken to Marshall Browning Hospital by ambulance, where she remained for about two hours. A doctor was called in and Claimant was given crutches to use. She had an ambulance bill for $109 and a bill from Marshall Browning Hospital for $153. Claimant had pain for several days. She went to see Dr. Hurley, an orthopedic surgeon, on September 6, 1988. X rays showed the knee was fractured. The knee was wrapped in a bandage and later put in a cast. Claimant had the cast on for about six weeks. She was unable to do her household chores. She had pain in her leg for over six weeks. She took prescription pain pills for the pain. After the cast was removed, Claimant wore an immobilizer for three or four weeks. She had physical therapy five or six times. She stopped the physical therapy on her own and did not complete the recommended therapy.

Claimant still has problems with her knee. It aches in cold weather. She cannot walk, garden or swim as much as she used to. Claimant had bills from the Carbondale Clinic related to the injury totaling $447. Dr. Hur-

ley's bills totaled $129.76. However, the last time Claimant saw a doctor about the knee was on December 19, 1988. On that date, she told Dr. Hurley she was doing well.

Dr. Philip Hurley testified that he provided care and treatment for Claimant for the injuries she suffered on August 31, 1988. He provided an orthopedic evaluation. Claimant had a nondisplaced oblique fracture of the left kneecap. This means there is a fracture but the bones have not separated. Claimant's knee was put in a cast for one month and she was given pain pills. She also was directed to use crutches. The cast extended from just about the ankle to just below the groin. Dr. Hurley followed the patient until December 19, 1988. On October 6, 1988, as the healing was not complete, Claimant's leg was recast for three more weeks. On October 27, 1988, there was no tenderness at the kneecap and the fracture was healed. Claimant's knee was placed in an immobilizer and Claimant was prescribed physical therapy. Dr. Hurley said Claimant's progress was very good. On November 14, 1988, her motion was up to 112° of flexion with full extension and there was no swelling, tenderness or damage to the kneecap. Her ligament exam was completely normal as were all tests given. On December 19, 1988, Claimant had a full range of motion and all exams were normal. Claimant did complain of occasional aching and discomfort in her knee after a busy day. Dr. Hurley has not seen the Claimant since December 19, 1988.

Dr. Hurley formed the opinion that the injuries will not cause Claimant any disability in the future. It is unlikely she will require any future medical care, treatment or medication. However, the injury could possibly predispose her to arthritis of the knee. This risk is minimal. She should have no problem walking or swimming

with the knee and she should have no further pain.

The State has a duty to use ordinary care to keep its property reasonably safe for the benefit of those who come upon its property as invitees. (*Peters v. State* (1984), 36 Ill. Ct. Cl. 255.) The State has a duty to its invitees to warn them of hazardous conditions not readily apparent. *Nolan v. State* (1983), 36 Ill. Ct. Cl. 194; *Ross v. State* (1971), 27 Ill. Ct. Cl. 104; *Kelly v. State* (1969), 26 Ill. Ct. Cl. 426.

For the Claimant to establish a breach of the heretofore stated duties, the Claimant must prove by a preponderance of the evidence that a dangerous condition existed, that the State had actual or constructive notice of the dangerous condition, and that the State's negligence was the proximate cause of the Claimant's injury. *Perlman v. State* (1979), 33 Ill. Ct. Cl. 28; *Mackowiak v. State* (1982), 35 Ill. Ct. Cl. 315.

Comparative negligence is to be applied in such cases. (*Peters, supra.*) A claimant is held responsible for all normal, obvious and ordinary risks at the time in question. (*Fleischer v. State* (1983), 35 Ill. Ct. Cl. 799; *Duble v. State* (1967), 26 Ill. Ct. Cl. 87.) A legal duty requires more than the possibility of occurrence and the State, like any other person, is charged with a duty only when harm is legally foreseeable. The issues of foreseeability and duty involve a myriad of factors, including the magnitude of the risk involved, the burden of requiring the State to guard against the risk, and the consequences of placing such a burden on the State. *Wilson v. State* (1989), 41 Ill. Ct. Cl. 50; *Owens v. State* (1989), 41 Ill. Ct. Cl. 109.

In this case, all four sisters went up the same stairs without difficulty in the same lighting or lack of lighting. Three of the sisters walked back down the stairs without

incident. Only the Claimant fell. One sister used the railing to hold on to. The Claimant did not recall holding on to the railing before she fell. There was no evidence presented that the State had actual or constructive notice of a dangerous condition. There was no evidence that anyone else had ever had a problem on the stairway. The State is not an insurer of the safety of persons visiting its fairgrounds, but rather such visitors are owed a duty of reasonable care in maintaining the premises. (*Berger v. State* (1988), 40 Ill. Ct. Cl. 120.) Claimant chose to go down the dark stairway without holding the railing. Joint Exhibit 1 indicated several other exits down lower and closer to the lighted stage. No experts were called to testify about any dangerous condition that could have been discovered. The unknown woman in the office was not called to testify to learn of her position and knowledge or to confirm or deny her alleged statement of an intent to provide lighting in the stairwells of the grandstand. There was no testimony presented to prove who was actually in charge of the grandstand on the evening in question. No pictures of the stairway were presented for the trier of fact to review to see if the stair size, steepness and width were a dangerous condition. (*Simpson v. State* (1985), 37 Ill. Ct. Cl. 76.) Claimant's failure to use the railing was significant contributory negligence. The Claimant has not met her burden of proof to show Respondent negligent.

Wherefore, it is hereby ordered that this claim is denied.

## ORDER

JANN, J.

This cause comes on to be heard on Claimant's motion for rehearing/revision of the Court's order entered

August 19, 1992, denying Claimant's claim for damages for personal injury.

The Court has carefully considered Claimant's petition for rehearing and finds that Claimant failed to establish by a preponderance of the evidence that Respondent breached any duty owed to Claimant. Claimant notes the Court's reference to the application of comparative negligence in such cases and asserts that said reference implies a finding of negligence on the parts of both parties. No such finding was made or implied.

Claimant has taken issue with several findings of fact in the opinion and argues hypotheses and facts not in evidence in attempting to persuade the Court to reconsider its findings. Upon review of the record, the Court affirms its opinion of August 19, 1991.

It is hereby ordered that Claimant's petition for rehearing/revision is hereby denied.