(No. 95-CC-0318— ▆▆▆▆▆

VERNA MAE TURNER, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 22, 1999.*

HARRIS, LAMBERT, HOWERTON & DORRIS (ROBERT H. HOWERTON, of counsel), for Claimant.

JIM RYAN, Attorney General (BRIAN DEES, Assistant Attorney General, of counsel), for Respondent.

## ORDER

MITCHELL, J.

Claimant, Verna Mae Turner, seeks judgment against Respondent, State of Illinois, for injuries allegedly sustained by the Claimant when she fell while negotiating a concrete stairway at the grandstand at the DuQuoin State Fairgrounds. Claimant's complaint alleges that on September 5, 1993, while attending a show at the grandstand at the DuQuoin State Fairgrounds, Claimant attempted to descend the stairs and fell breaking her hip. Claimant's fall is alleged to have occurred as a result of Respondent's failure to properly light the stairs, mark the stairs with reflective tape or paint or maintain the stair steps so that the steps were of consistent width and height. Respondent has denied the material allegations of the complaint and tendered affirmatively that Claimant was guilty of negligence and had assumed the risk by attempting to exit a grandstand event prior to its conclusion. Claimant denies the affirmative allegations of Respondent's affirmative defense.

Claimant's friend, Betty McSherry, testified that she and the Claimant attended a concert at the grandstand on the occasion in question. The entertainment was at night. The grandstand lights were dimmed during the performance. Claimant and the witness decided to leave early to avoid the turmoil of getting out of the parking lot. The photograph, identified as Claimant's Exhibit No. 5, showed the aisle as one is looking down toward the stage. Also see Claimant's Exhibit No. 1, which is the view looking up the stairs. There were no aisle lights. There is a hand rail on the stairs but not where Claimant fell. The

rails are shown in Claimant's Exhibit No. 1 and stop at about the area of the sign that says "Section Box M." There are no hand rails on the bottom two or three steps. McSherry marked on Claimant's Exhibit No. 1 with a ballpoint pen the location from where the Claimant fell descending the stairs. McSherry and Claimant were holding hands as they walked down the steps. At the bottom of the steps is an aisleway. Claimant was in front and McSherry was behind. McSherry and Claimant were holding on to seat backs as they walked down. There were other people coming down the stairs at the same time, some behind and some in front of the Claimant and her friend. The steps are of different height and width. McSherry testified that Claimant's physical condition prior to the accident was excellent and the friends did a lot of walking.

Helen Russell, a friend of the Claimant, was called on behalf of Claimant and testified. Russell testified that Claimant was vigorous prior to the accident but after the accident was much less so and complained of discomfort.

Claimant's husband testified that they had been married 58 years and before the accident she was very vigorous and after the accident she is in pain and she can't do the things she used to do.

Gene Turner, the Claimant's son, testified that, before the injury, people were amazed at the vigorous nature of his mother and after the injury his mother does a lot of complaining and is much less vigorous and active.

Claimant testified that, in order to get to their seats, she and McSherry had to climb the stairs. While the show was in progress, they decided to leave early. Claimant's Exhibit No. 5 shows the stairs they had to go down as they left the show early. The lighting was dim. There were no other people on the stairs as the Claimant and her friend

left. They were descending the stairs slowly. Claimant could not remember holding on to anything as they went down the stairs. Claimant testified that she was watching where she was going and was looking at the stairs as she descended. There were no lights on the seats or rails or stairs, and no reflective tape. There were no signs telling that the size and height of the steps were different. The handrails do not go all the way to the bottom of the stairs as shown on Claimant's Exhibit No. 1. Claimant and her friend, Betty, were holding hands as they walked down. Claimant fell from the stair marked "VT" on Claimant's Exhibit No. 1. She thought it was the lowest step and fell.

On cross-examination, Claimant testified that she had been to the grandstand at the DuQuoin State Fair on earlier occasions, and had seen several shows prior to the time when she fell. She did not recall how many. At the time of her deposition, she testified it might have been around six or eight times. It could have been more than six or eight times, but could not have been any less. On previous occasions, when Claimant went to a show in the grandstand, she always sat above the walkway. She had been up and down these steps before. When she was standing on the step marked "VT" on Claimant's Exhibit No. 1, she thought it was the last step. Claimant also testified that, as she was standing on the step that is marked "VT" on Claimant's Exhibit 1, she thought that she had to step one more time. She just fell off the bottom step. This was not the first time she had left a grandstand show early. Claimant had no trepidation about leaving the show early when the lights were dim and thought it would be safe. The lights were very dim. Claimant thinks that, if the lights had been brighter, she would have seen the step. Claimant said she was looking down but it looked like the last step, and that she was going to step on to the floor. The bottom step was a lot wider.

Claimant's photographer was called and testified about photographs and measurements as demonstrated in Claimant's Exhibits Nos. 1 through 5. Claimant's Exhibit No. 2 is a photograph of the steps using a tape measure to measure the distance from the bottom of the step to the top, which on the photograph indicates about 8½ inches. This is the step that is immediately below the step marked 1. Claimant's Exhibit No. 3 shows the measurement of step 1 to be 7 inches. There is a difference in height of 1½ inches. Claimant's Exhibit No. 4 is a photograph of the width of the step immediately below step 1. There is a difference in the width of the steps as one descends. The first step down is around 9 inches or 9¼ inches, and then the one below it is right at 18 inches.

Respondent called Claimant's friend, Betty McSherry, who testified that, on the occasion in question, there had been people going up and down the stairs during the show for drinks and sandwiches and moving up and down the stairs in the grandstand. When the show starts, the grandstand house lights are dimmed for the show and it was under these conditions that she saw people moving up and down the stairs in and out of their seats. There were a few people leaving the show at the same time as the Claimant and McSherry.

Chris Purcell was called and testified on behalf of Respondent that he had worked at the DuQuoin State Fair for the State for 13 years. Purcell assists the Manager, books the grandstand entertainment, takes care of concessions and keeps the cash books and is thoroughly involved in the grandstand shows during the DuQuoin State Fair. The State took over the operation of the DuQuoin State Fair in 1986 and had run shows up through the period of 1993. The grandstand was constructed in 1947 and has house lights that are on a different system than the stage

lights. The lights can be run independently. During shows, the house lights are dimmed. The lights do not go off completely. People move in and out of the stands during the shows. Patrons move up and down the stairs to their seats.

This Court sustained Respondent's objections to Claimant's Exhibits Nos. 2, 3 and 4 on the basis of relevance and materiality. The evidence was to the effect that the steps shown in Exhibits Nos 2, 3 and 4 were not the steps upon which the Claimant described the accident took place, but were photographs and measurements made for identification purposes as indicative of the differences in the steps below where the Claimant fell. This Court sustained the objection, noting that the steps shown in such exhibits were not where the Claimant fell, and it could not be determined from looking at the photographs if the same differences existed on the steps directly and immediately involved in her fall. For the convenience of the Court, the photographs to which objection was sustained were made part of the record, so that the Judges of the Court of Claims could review the ruling of the Court on this point.

Both parties were invited specifically by this Court to benefit the Court with briefs as required under the Rules. Respondent has not seen fit to provide a brief, despite the Court's concern regarding what standards should apply to step uniformity in grandstands owned and operated by the Respondent.

The State has a duty to use ordinary care to keep its property reasonably safe for the benefit of those who come upon its property as invitees and to warn them of hazardous conditions not readily apparent. In order for Claimant to establish a breach of Respondent's duty, she must prove by a preponderance of the evidence that a

dangerous condition existed, that the State had actual or constructive notice of the dangerous condition and that the State's negligence was the proximate cause of the Claimant's injury. (*Hall v. State* (1991), 45 Ill. Ct. Cl. 276, 280.)In *Hall, supra,* Claimant sought recovery from Respondent when she fell down an unlighted stairway while leaving the grandstand at the DuQuoin State Fair on August 31, 1988. As in the case at bar, Claimant in the *Hall* case sought damages in the amount of $100,000 for medical expenses and pain and suffering. In *Hall,* Claimant and her sisters went to a program at the grandstand in the DuQuoin State Fairgrounds. The Claimant and her sisters climbed upstairs to get to their seats. There were no ushers when they arrived, and the show had begun with the stage being lit up. It was dark and there were no overhead lights where they were sitting. The Claimant and her sisters decided to leave early at a time when only the stage lights were on. They left single file and the Claimant was third in line. Claimant testified that she could not see the stairs and it was very dark in the stairwell. There were no lights on the stairs and no lights on the end of the seats; however, there was a bannister or railing. Claimant testified she could not see where she stepped and felt her way down with her feet trying to feel the next step as she went. Claimant testified the steps did not feel uniform in size or shape. Claimant fell and was injured, having no idea how many steps she missed. Claimant and her sisters went down the same stairs they had come up.

In the *Hall* case, *supra,* this Court noted that the Claimant and her sisters went up the same stairs without difficulty in the same lighting. In the case at bar, Claimant arrived before dark and decided to leave early after it became dark. In *Hall,* Claimant's companions negotiated the stairs without difficulty, and this Court noted that only the Claimant fell. In *Hall,* the Claimant did not recall holding

on to the railing whereas, in the case at bar, Claimant recalled holding on to the railing and the backs of seats. In this case, as in the *Hall* case, there was no evidence presented that the State had actual or constructive notice of a dangerous condition. There was no evidence that anyone else had ever had a problem on the stairs. The State is not an insurer of the safety of persons visiting its fairgrounds but rather such visitors are owed a duty of reasonable care in maintaining the premises. (*Hall v. State* (1991), 45 Ill. Ct. Cl. 276, 281; *Berger v. State* (1998), 40 Ill. Ct. Cl. 120.) As in the *Hall* case, Claimant herein chose to go down the dark stairway prior to the conclusion of the performance. No experts were called to testify about any dangerous condition that could have been discovered. The pictures presented in the case at bar do not tend to reveal that the size or width of the steps constituted a dangerous condition *per se*.

The State is not an insurer required to pay for all accidents that occur on its premises, rather, the State must be found negligent. (*Gillmore v. State* (1986), 40 Ill. Ct. Cl. 85; *DeWalt v. State* (1994), 46 Ill. Ct. Cl. 293, 295.) In *DeWalt, supra*, the Claimant sought damages for a fall on a step leading to a platform at the Centralia Correctional Center. In *DeWalt*, Claimant did not establish that the placement of the step was unsafe and testified that "somehow or another, I [Claimant] tripped up this step." *DeWalt*, at 296.

In *Harder v. State* (1991), 44 Ill. Ct. Cl. 235, Claimant brought suit for injuries sustained when she allegedly fell while negotiating a step near the Old State Capitol Building in Springfield. This Court pointed to the fact that many people had negotiated the step in question without incident, indicating that the Respondent was not negligent despite Claimant's contention that a failure to provide

guardrails or warnings proximately caused Claimant's injuries. (See *Harder, supra,* at 237.) In *Lyons v. State* (1987), 39 Ill. Ct. Cl. 192, this Court denied recovery in a fall on stairs at Blackhawk State Park. The Court noted that minor defects are not actionable in that Respondent would not anticipate danger from minor defects. In *Lyons, supra,* this Court noted that it was a principle of law that an invitee, such as Claimant, assumes normal or obvious risks attendant to the use of the premises (see *Lindberg v. State* (1954), 22 Ill. Ct. Cl. 29), and that, because the State is not an insurer, it cannot be expected to remove all risks of accident which may occur in the absence of negligence. Obviously, there are risks inherent in ascending or descending concrete stairs in dim light that must be assumed by Claimant. *Lyons v. State,* at 195.

Evidence was introduced that many people gained access to and egress from the grandstands by using the stairs in their dimly lit condition during the performances. Claimant was not required to attempt an exit through the use of the stairs in dim light conditions, and chose to do so to suit her own convenience. Although Claimant points to certain alleged deficiencies with respect to the height or width of the steps and the absence or presence of railings at the exact point the Claimant alleges she fell, Claimant had ample opportunity to observe.

As in the *Hall* case, *supra,* the Claimant has not met her burden of proof to show Respondent negligent.

Therefore, the claim is denied.