(No. 85-CC-1083-■■■■■■■■

DESSIE MAE OWENS, Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 10, 1989.*

BEGER, FERGUSON & ASSOCIATES (JERROLD R. BEGER, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (JOHN R. BUCKLEY, Assistant Attorney General, of counsel), for Respondent.

Sommer, J.

The Claimant, Dessie Mae Owens, age 51 at the time of the mishap, has brought this action for damages for personal injury with accompanying pain and suffering and medical expenses.

On December 15, 1983, the Claimant, Dessie Mae Owens, drove her daughter-in-law, Lavalle Owens, a public aid client, to the office of the Department of Public Aid in Rockford. At the Rockford office, an enclosed entranceway opened into a large waiting room in which clients sat waiting to be summoned to meet their caseworkers. As the Owens entered the waiting room, there were chairs in front of them and to the right. They sat approximately 15 feet to the right of the entrance door, three or four feet from the interior door to the offices in which clients were interviewed.

Caseworker supervisor, Patricia G. Story, entered the waiting room through the interior door near the Owens and summoned the Claimant's daughter-in-law to follow her into the offices. When Ms. Story first saw the Claimant, the Claimant was seated. However, just as Ms. Story was going through the interior door with the Claimant's daughter-in-law, they both turned, and saw the Claimant on the floor. The Claimant had fallen between where she was seated and the interior door. Ms. Story went to the Claimant's aid.

The incident occurred about 1:30 in the afternoon. Snow had been falling all day, and persons entering the waiting room had brought snow with them on their shoes. This snow melted into puddles. Ms. Story stated that the Claimant was down on her knee in one of the puddles. The floor was made of tile and there was no rug in the waiting room that was usable by entering parties. Generally, janitors did not come on duty until late afternoon, but from time to time a clerk would be summoned to clean up spills. This clerk was not summoned on December 15, 1983, prior to the incident.

The State's duty to persons legitimately on its premises is to maintain reasonably safe conditions. The accumulation of water and snow on the tile floor in the large waiting room did create a situation in which it would be reasonably foreseeable that someone could slip and fall. To remedy the situation would not have been burdensome. The clerk could have been summoned to keep the floor clear or mats and rugs could have been placed on the floor in trafficked areas.

The accumulation of water and snow was the proximate cause of the Claimant's fall and injury, and the State's employees clearly had knowledge of the situation. This Court finds negligence on the part of the Respondent.

The Claimant saw a physician the next day who told her that she had a fractured kneecap (patella). This diagnosis was considered probable by her surgeon and a later examining physician. Mrs. Owens underwent whirlpool treatment, wore a knee brace for three months, and in May of 1984 had a pain killer injected into the knee. The Claimant finally underwent surgery on her left knee on August 11, 1984, and wore a knee brace for some time thereafter.

Entered into evidence were the reports of her surgeon, the hospital and the orthopedic physician who examined her in Arkansas where she presently resides.

The hospital reports indicate that the surgery repaired a torn meniscus (cartilage) in the left knee. At that time it was reported that there was "significant degeneration of the undersurface of the patella." The surgeon in December of 1985 refers to this as "post-traumatic chondromalacia of patella." Chondromalacia of the patella is a deterioration of the cartilage on the underside of the patella. Other than occurring naturally, it can be caused by a fracture of the patella, a hard knock or a torn meniscus. An injured party feels sharp pain and stiffness and the knee gives way on occasion. Mrs. Owens reports these symptoms.

In May of 1985, the surgeon reported a good recovery with no swelling and close to full range of motion of the left knee. The Claimant still indicated some discomfort. In December of 1985, the surgeon noted that her symptoms may increase as the patella fracture and chondromalacia may lead to "degenerative arthritic damages." The Arkansas physician in October of 1986 reported "degenerative arthritis" in both knees with pain and swelling more pronounced in the left knee, with the possibility of further surgery.

In April of 1987, the surgeon reported that chondro-malacia of the patella was present in the left knee, and that the condition was partially traumatic in origin. The question in cases such as this is to what extent the trauma caused or accelerated the chrondromalacia, as naturally arising arthritic changes also contributed to the condition. We have no report from the Respondent's examining physician, if any, indicating the extent of arthritis in other parts of the Claimant's body, or the probably extent of pretraumatic arthritis.

The preponderance of the evidence shows and this Court finds that the Claimant suffered a probable fractured patella and a torn meniscus of the left knee. The left knee was treated surgically to repair the torn meniscus. A chondromalacia of the patella has since set in which may require surgery, in various degrees of seriousness, if it does not respond to conservative treatment. There is no evidence of the disability due to the fall that the Claimant will suffer in the future, though she is suffering disability at the present time.

This Court is asked to make a fine judgment in the matter of its award for disability and its duration. The Claimant's condition is not solely due to the post-traumatic chondromalacia and the prognosis after treatment or surgery is not in evidence. Therefore, the Court awards Dessie Mae Owens $12,000 for her disability.

The matter of lost income is speculative in this claim. Mrs. Owens stopped working three years prior to the injury. No evidence was introduced concerning her past wages or her desire to return to work. There is no evidence of Mrs. Owens' ability to perform work she had previously done or could do after her pending treatment or surgery. Therefore, we make no award for lost income.

114

Medical bills in the amount of $4,363.68 have been stipulated, and we award such an amount to Mrs. Owens and the vendors.

The Claimant asked for $5,000 for pain and suffering to date in her amended bill of particulars, and we award that amount to Mrs. Owens, and we award $5,000 for future pain and suffering.

The Claimant's surgeon stated that the potential operation would range from $3,000 to $5,000 in cost. We award $5,000 to Dessie Mae Owens for treatment or the operation, and $3,000 for therapy.

It is therefore ordered that Dessie Mae Owens be awarded a total of $34,363.68 and that the award be made payable to Dessie Mae Owens and her attorneys, Schirger, Begar and Ferguson, Ltd.