(No. 88-CC-2265–

DOLORES LAMBATOS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 28, 1992.*

KWIATT & SILVERMAN, for Claimant.

ROLAND W. BURRIS, Attorney General (STEVEN SCHMALL, Assistant Attorney General, of counsel), for Respondent.

OPINION

SOMMER, J.

This is a claim for personal injuries sustained on May 8, 1987, as a result of a fall by the Claimant on a mat or carpet runner in the foyer of a dormitory at Northern Illinois University. The Claimant alleges that the Respondent was negligent in maintaining the foyer, thereby creating a dangerous condition. The Claimant alleges that rocks, dirt and dust from maintenance work being done on the foyer walls had accumulated on and underneath a carpet runner which caused it to slide when she stepped on it, resulting in her fall and injury. The carpet is alleged to have been curled and worn.

Both the Claimant and her daughter testified that the Claimant's foot was tangled in the carpet after she fell and that the carpet was tattered. Additionally, the daughter testified that the foyer of the dormitory had debris in it for three or four days prior to the accident due to chipping done on the walls by workmen. The building foreman testified that in normal circumstances the carpet or mat should be turned over every day and mopped so that no debris would accumulate under it. He also stated that the janitor responsible had not done any work on the foyer that day. He was not able to say whether clean-up work was done the previous day. However, he did not know of any maintenance or construction work being done in the area at the time of the fall, nor did he see any evidence thereof. Other university employees testified similarly.

The Respondent urges that there is not sufficient evidence that a dangerous condition was created in the foyer, and that the Claimant has not established that the Respondent had actual or constructive notice of the

condition. Whether or not evidence is sufficient to establish constructive notice must be determined on a case by case basis. *Samuelson v. State* (1986), 38 Ill. Ct. Cl. 257, 261.

We find the evidence here as tending to show that construction debris had accumulated in the foyer for a period of time and that the Respondent can be construed as having had sufficient notice of the conditions in the foyer in order to have made corrections. It is true that the State is not an insurer of the safety of those using the State's property, but the State owes a duty to the public to exercise reasonable care in maintaining its property. *Stedman v. State* (1957), 22 Ill. Ct. Cl. 446; *Owens v. State* (1989), 41 Ill. Ct. Cl. 109; *Long v. State* (1986), 40 Ill. Ct. Cl. 39.

It is our finding that the Respondent was negligent in allowing the condition in the foyer to continue and that the condition was dangerous. Further, this negligence was the proximate cause of the Claimant's injuries.

At the hearing, the Claimant testified as to stiffness and intermittent pain in her ankle and an inability to engage in more strenuous activities without pain and limited motion.

The Claimant then introduced the testimony of an expert physician, Dr. William B. Fischer, to objectively establish the Claimant's injuries. There is no dispute that the Claimant suffered a fibular fracture from the incident complained of. Dr. Fischer testified that this fracture had healed and that there would be little or no disability or future pain and suffering associated with it. Dr. Fischer testified that X rays taken at his request showed evidence of a fracture of the os calcis, a bone in

the heel. This fracture left the bone misaligned which, along with some ligament fibrosis, would cause some pain and loss of motion when greater than normal stress would be placed on the ankle. It is probable, according to Dr. Fischer, that the joint will become arthritic and require surgery. This surgery would alleviate some of the disability and pain existing prior to the surgery.

Fischer could not state conclusively that the os calcis fracture occurred at the time of the fibular fracture. He testified that the X rays of the treating hospital did not show the os calcis fracture, but that such would not necessarily be evident unless sought out. Dr. Fischer's testimony was accompanied by a medical journal article which indicated that there was a likelihood that the os calcis fracture occurred at the same time as the fibular fracture. The State introduced no medical evidence in rebuttal, neither the treating physician's testimony nor that of an examining physician. We find that the preponderance of the evidence shows that the os calcis was fractured in the fall complained of.

The Claimant seeks a variety of damages. First, medical bills of $742.35 are uncontested. Dr. Fischer testified as to probable further medical bills in the amount of $2,600.00. There would be no future pain and suffering or disability in regard to the fibular fracture, but pain and suffering at the time of the incident was established by testimony and we value this at $3,000.00. There would be further pain and suffering and disability in regard to the os calcis fracture, but this could be diminished if surgery is undertaken. If we give an award for future surgery, then the remaining pain and suffering and disability we value at $7,500.00.

Finally, there is a claim for lost wages in the amount of $6,336.00. The Claimant at the time of the injury was

an employee of a temporary agency. The claim for lost wages assumes that the Claimant would have worked eight hours every working day for 17 weeks at which point she took a piece work job which allowed her to work at home. The Claimant indicated that soon after her injury she had to go to work full time, and she had such an offer from the temporary agency. No evidence in corroboration of these assertions was entered. The Respondent argues that the claim for the full-time work is too speculative. With this we agree. We also agree that the Claimant may have worked some during the 17 weeks, but we do not know how to find a value for this as no evidence establishing the duration of prior temporary work was entered. Therefore, we find the lost wages unproved. In summary, we award the Claimant a total of $13,842.35 in full satisfaction of her injuries. It is therefore ordered that the Claimant be paid $13,842.35.