(No. 92-CC-0392-)

PEGGY ANN SIMMONS and HAROLD GORDON LOVE, Co-Administrators for the Estate of LEWIS G. LOVE, deceased, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed May 23, 1995.*

*Opinion filed July 1, 1997.*

ROBERT R. SCHULHOF, for Claimant.

JAMES E. RYAN, Attorney General (MICHAEL A. WULF, Assistant Attorney General, of counsel), for Respondent.

## ORDER

MITCHELL, J.

This cause comes before the Court upon a motion to dismiss filed by the Respondent. The Claimants are heirs of a gentleman who drowned in an open cistern filled with sewage. The cistern was located on land owned by the State of Illinois. The State was aware of the condition for over one year prior to the accident. The State was further aware that the cistern was located in an area frequently traveled by citizens. Part of the fluid in the cistern was sewage which apparently drained from a trailer owned by Mr. Denton.

A complaint was filed in September 1991. After extensive discovery, the matter was set for trial on July 20, 1994. On July 18, 1994, less than two days before trial, the Respondent filed a motion to dismiss. The Respondent did not give timely notice of the filing of this motion

to the Claimant's attorney. Unfortunately, under the present rules of the Illinois Court of Claims, the tardiness of this motion to dismiss is not, in itself, sufficient grounds for its denial. This Court, however, takes note of the fact that there has been a consistent pattern of extremely late filings of motions to dismiss by the Attorney General's office. It is hoped that this will be addressed by internal changes in procedure, or in the alternative, by a rule change in the future which will set reasonable deadlines for the filing of dispositive motions.

The Court feels that Commissioners of this Court have sufficient present authority to set discovery schedules and deadlines for the filing of dispositive motions. The Court notes that this was not done in this case, and therefore, we cannot, and do not, deny this motion on the basis of the timeliness of its filing.

Therefore, we address the merits of the motion to dismiss. The motion basically states that the case should be dismissed because the Claimants failed to exhaust their remedies. The Respondent claims that the actions of the trailer owner, Denton, in discharging sewage from his rented trailer into the cistern, were the, or a, proximate cause of the death which led to the filing of this claim. Because the Claimants failed to sue the trailer owner and exhaust those possibilities of recovery before filing this claim against the State, the Respondent argues that the claim should be dismissed.

The issue therefore becomes one of proximate cause. Were the acts of the trailer owner proximate causes of the death, or were the acts of the State proximate causes of death? If the acts of the trailer owner were the proximate cause, or a proximate cause, of the death in question, then the Claimants should have sued him and exhausted that potential remedy prior to bringing this claim. This claim

would be dismissed if we found that the acts of the trailer owner were a proximate cause.

Conversely, if the actions of the trailer owner were not a proximate cause of the death, then there would be no requirement for the Claimants to sue the trailer owner prior to bringing this claim. We would, in that case, deny the motion to dismiss.

Questions of proximate cause are ordinarily ones of fact. They can only be questions of law when the facts are not only undisputable, but are also such that there can be no difference in the judgment of reasonable minds as to the inferences to be drawn from them. Here, the Respondent is asking us to dismiss a case prior to trial. We therefore may not presently have all of the facts necessary to decide as a matter of law whether the acts of trailer owner Denton were a proximate cause of the death of Lewis G. Love. The Illinois Supreme Court addressed a similar issue in the case of *Briske v. Village of Burnham*, 397 Ill. 193. The Court there stated:

"If a negligent act or omission does nothing more than furnish the condition making an injury possible, and such condition, by the subsequent independent act of a third person, causes an injury, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury."

Similar results were reached in *Carr v. Shirland Township* (2d Dist. 1978), 66 Ill. App. 3d 1033, 23 Ill. Dec. 655, 384 N.E.2d 449; *Cannon v. Commonwealth Edison Co.* (1st Dist. 1993), 250 Ill. App. 3d 379, 190 Ill. Dec. 183; and *Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 181 Ill. Dec. 922, 609 N.E.2d 290.

All of these cases stand for the proposition that, if a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of the injury. Proximate cause is absent if independent acts of the third person

break the causal connection between the alleged original wrong and injury. The new and independent act becomes the proximate or immediate cause of the injury.

When we apply these legal standards to the facts presently before the Court, we must of necessity conclude that we have insufficient facts to make a final decision as a matter of law whether Denton's negligence was a proximate cause of Lewis Love's death.

There has been significant discovery, and both parties have filed briefs on this issue. However, it is the belief of the Court that additional significant facts may be discovered or elicited at a trial of this cause.

Therefore, the motion to dismiss is denied. The Respondent is given leave to renew the motion to dismiss at the conclusion of the trial so that the issue of exhaustion of remedies will not be waived by the Respondent. This claim is therefore remanded to a Commissioner of this Court for trial.

## OPINION

MITCHELL, J.

This is a wrongful death action. The complaint alleges that on January 13, 1990, Respondent owned, and was in possession of, a piece of real estate in Old Shawneetown, and that on the real estate there was an open cistern or pit with vertical sides being in excess of eight feet deep. It is alleged that Respondent knew or should have known of the existence of the pit, and that Respondent negligently allowed the pit to exist uncovered, unfilled, and unprotected. It is alleged that decedent fell into the pit and drowned. The action is brought under the provisions of the Illinois Wrongful Death Act.

Respondent has admitted that Respondent owns the property, and that there was a cistern or pit on the property

with vertical sides, but denies that the cistern or pit was open or that it was in excess of eight feet in depth. Respondent has also admitted that it knew of the existence of the cistern or pit at all times after the spring of 1989. Further, Respondent admitted that people traversed through the property upon which the cistern or pit was located, and admitted that Respondent received a written report from Hubert Combs early in 1989 informing Respondent of the cistern or pit.

The decedent's body was discovered on October 13, 1990, approximately five days after his disappearance was noted. The cistern was covered with sheets of tin supported by two-by-four boards. At some point, Respondent's agent had covered the hole with half-inch plywood and put some two-by-four posts around the edge of the hole nailing one-by-fours to the sides of the two-by-fours. The makeshift fence was three and one-half feet off of the ground and had two rungs. The barriers had been pulled down by somebody prior to the decedent's death. An adjacent landowner had put sheet metal over the plywood to attempt to keep the boards installed by the State from rotting. This was done because there were children living in a mobile home near the cistern. The State was informed that the adjoining landowner had placed tin over the plywood. The adjoining landowner testified that the State had put wood over the cistern and had "done a good job." The adjoining landowner, Denton, had looked in the cistern the first day that the decedent was missing and did not see him. They had to scoot the tin back to look in the cistern. There is no evidence in the record to suggest how it came to pass that the decedent fell in this cistern and drowned.

Claimant argues that the State had actual knowledge of a dangerous condition on State property and failed to take adequate steps to protect the public. Claimant argues that

the State knew that raw untreated sewage was seeping into this cistern, and argues that the State was not merely negligent, but grossly negligent. The efforts of the State to put a cover on the cistern are said to be a "bandaid" approach to a dangerous situation. Unfortunately, Claimant offered no citation of authority on the liability issue in this case.

Respondent contends that the evidence has not preponderated in favor of the Claimant, and the Claimants presented no evidence that the decedent fell through the covering put in place by Respondent's agents. Further, Respondent argues that the steps taken by Respondent to put a cover on the pit were a reasonable exercise of Respondent's duty of care. Furthermore, Respondent argues that Claimants have failed to exhaust their remedies because it was the sewage and seepage at the bottom of the hole that drowned the decedent, and no suit was filed against those allegedly responsible. Finally, Respondent argues that the damages alleged are excessive.

In acknowledging that the State has a duty to maintain its premises in a reasonably safe condition for persons legitimately on the premises, Respondent cites *Owens v. State* (1989), 41 Ill. Ct. Cl. 109. Owens involved a slip-and-fall case in the public aid office at Rockford. There was an accumulation of water and snow and this Court held for the Claimant stating that the water on the tile floor in the waiting room created a situation where it would be reasonably foreseeable that someone could slip and fall; to remedy this situation would not have been burdensome. The clerk should have summoned to keep the floor clear or to place mats and rugs on the floor in the trafficked areas. (41 Ill. Ct. Cl. 109, 111.) Respondent acknowledges that the State is to exercise reasonable care in the maintenance of its parks and cites *Finn v. State* (1962), 24 Ill. Ct. Cl. 177. The *Finn* case involved a hole a foot wide and

four or five inches deep at the playground area near the lodge at the Pere Marquette State Park. Claimant made a claim for an injured ankle. The claim was denied because of a lack of actual or constructive notice. In the course of the opinion, the Court made the following observations:

"While it is true that Respondent is under a duty to exercise reasonable care in maintaining its parks, it is likewise a law that Respondent is not an insurer against accidents occurring to patrons while using the park facilities. *Penwell v. State of Illinois*, 22 C.C.R. 477.

It has been the law of this State that, before the State can be held liable for an injury on property maintained by it, it must have actual or constructive notice of the dangerous or hazardous condition. *Penwell v. State of Illinois*, 22 C.C.R. 477.

We have previously held that the State of Illinois in maintaining a nature park, is not obligated to warn of every dangerous place within it. It is, however, obligated to warn of a danger that exists on a trail, which it knows is being used by the public, who would have no knowledge of the existing danger. *Alberta Hansen, Administrator of the Estate of Edward Boegen, Deceased v. State of Illinois*, 4843.

It is our opinion that the State cannot be held responsible for every depressed area or hole into which someone might step and turn their ankle, otherwise injure themselves, throughout the State Parks. To require a constant inspection in a park of some size, where the State maintains several thousand acres for the benefit of the public, would place an undue hardship and extraordinary burden on the State by and through its agents and servants.

\* \* \*

In practically all of the State Parks there are certain areas for picnicking, play areas for baseball, swings, and areas of recreation where the ground might be depressed, and where someone might turn their ankle, which would result in injuries, such as were sustained by Claimant. If a recovery were had in all these cases, the State could be considered an insurer of everyone using the park facilities and playground areas, which would place an undue burden on the State to make careful inspection of every playground area as to any depression, which might be covered by grass, such as the one in question."

Respondent cites *Dunbar v. State* (1992), 45 Ill. Ct. Cl. 176, for the proposition that the State is not an insurer of the safety of persons who visit the parks and recreational areas. Claimant sought damages when she stepped in a hole at the DuQuoin State Fairgrounds and injured her ankle. Her claim was denied because the hole was

shown to be in a landscaped area, was large and readily apparent, was a natural condition, and was located such that the area was not used by large numbers of people.

Respondent asserts that the State is not required to undertake extraordinary, burdensome inspections or maintain its parks in such condition that patrons may wander at will over each and every portion thereof and cites *Lyons v. State* (1987), 39 Ill. Ct. Cl. 192, and *Pulizanno v. State* (1956), 22 Ill. Ct. Cl. 234.

In *Lyons,* the Claimant sought recovery for injuries sustained when she fell after descending a flight of stairs constructed of wood and maintained by the State at the Blackhawk State Park located near Rock Island, Illinois. The claim was denied because the alleged defect was minor, and there was no evidence that Respondent had actual or constructive notice thereof. The Court stated as follows:

"Because the State is not an insurer, it cannot be expected to remove all risks of accidents which may occur in the absence of negligence. Obviously, there are certain risk inherent in hiking that must be assumed by the hiker."

In *Pulizanno, supra,* this Court denied a claim for injuries sustained by Claimant who had attempted to rescue a companion and fell, injuring his leg. This Court held that Respondent could not reasonably have foreseen, or guarded against, the occurrence resulting in the Claimant's injuries, and denied the claim. In so doing, this Court quoted *Pollock on Torts* as stating the proper rule to be followed in determining what is or is not negligence on the part of the State:

"If men went about to guard themselves against every risk to themselves or others which might, by ingenious conjecture, be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on any events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things."

The site manager at the Shawneetown State Historic Site had known about the existence of this cistern for a year before the decedent's death. The first time the State did anything about this cistern is when the cover, apparently placed by adjoining landowners, caved in. This occurred perhaps six months before decedent's death. Respondent's agent put some two-by-sixes over the cistern and some half-inch plywood. At that time, the cistern was probably eight feet across and about eight feet deep. The area is very close to the Ohio River, subject to flooding, and seepage. The site manager reported the existence of the cistern to his superiors but was not authorized to fill the cistern in until after the accident. The area is open land and the site manager had seen people walking back and forth as their needs dictated. The site manager states he didn't fill the cistern in because he "thought they were on a deal to trade the lot" to a third party. The site manager made no recommendation to have the cistern filled in, and cannot recall whether he was ever told to take any action with regard to the open cistern after it was reported. After the site manager placed plywood over the hole, someone put sheet metal over the plywood. Although the site manager claimed to have checked the site every week after he placed the plywood on the hole, he never checked to see if there was anything under the sheet metal that had been placed over the hole.

Claimant's expert witness testified that the value of decedent's life over his life expectancy of 11.8 years was $876,000. The adult children of the decedent testified that his health was generally good, but he occasionally took nitroglycerine for his heart. Decedent was not on any regular medication and suffered no particular problems.

Decedent's daughter and her family saw the decedent on a daily basis and decedent's son stated that he

saw his father regularly twice a week until he had moved about ten days prior to decedent's death. There was testimony that they were a close family and missed the decedent's instruction and moral training, society, companionship and love.

Claimant cites *Farrow v. Augustine* (1964), 45 Ill. App. 2d 295, 196 N.E.2d 16, and *Hall v. Gillians* (1958), 13 Ill. 2d 26, 147 N.E.2d 352, for the proposition that, in Illinois, when the decedent leaves direct lineal kin, there is the presumption that they have suffered some substantial pecuniary loss by reason of the death. This includes loss of the parent's society by the adult child and the support and attention of the deceased parent. On the other hand, there is evidence in the record that the decedent drank heavily and on a daily basis. Respondent argues that the evidence suggests a lack of closeness between the decedent and his family.

Although the State is not an insurer of the safety of persons who visit the parks and recreational areas, it does have a duty to maintain its premises in a reasonably safe condition for persons legitimately on the premises. *Owens, supra.* In the instant case, the Respondent's agents had actual knowledge of a dangerous condition and failed to use reasonable care in warning the public against this danger. Therefore, the Court awards $40,000 to the Claimant.