(No. 94-CC-0600—■■■■■■■■■■

KARLA BURNS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed February 26, 2001.*

ANDREW KLECZEK, for Claimant.

JIM RYAN, Attorney General (MARK MARLOTT, Assistant Attorney General, of counsel), for Respondent.

## OPINION

MITCHELL, J.

Claimant, Karla Burns, seeks judgment against Respondent, State of Illinois, for injuries she suffered when she tripped and fell at the top of a stairway located in Edwards Hall on the campus of Illinois State University ("ISU"). Claimant alleges that broken tiles at the top of the stairway caused her to fall. She asserts Respondent breached its duty to maintain its premises in a reasonably safe condition. Her complaint states Respondent was guilty of one or more of the following acts or omissions:

"a. By allowing said premises to deteriorate thereby rendering the stairway unsafe for use as a passageway for Claimant and other invitees;

b. By failing to warn Claimant and other invitees of an unsafe condition on its premises;

c. By failing to remedy the unsafe condition of the premises prior to the occurrence of the incident alleged hereby; and

d. By negligently repairing the unsafe condition alleged herein thereby exasperating the hazard on the premises."

Claimant testified that on May 6, 1992, she was a full-time student at ISU. In the early afternoon she went to Edwards Hall to take her last final exam. She was wearing Nike cross-runners. The exam room was on the second floor of the building which had three entrances. She entered the building through what she called the main entrance. She had used this entrance on occasion, but she usually entered the building through an entrance she called the rear entrance. She was using the main entrance because the students had been told prior to the final exam that they would have to check in at a specific site to have their I.D.s checked before the exam. She walked up the stairway that is shown in Claimant's Exhibit No. 2. This stairway leads to a landing and then to another stairway going in the opposite direction which leads up to the second floor. Claimant then proceeded up the stairway leading to the second floor. Claimant's Exhibit No. 4 shows the top of this stairway. The upper right-hand portion of Claimant's Exhibit No. 4 shows the doorway that Claimant needed to enter to get into another entrance to the exam room.

Claimant testified that, as she approached the second floor, she was going up the right side of the stairwell. There were a few other students on the stairs at the time. She was holding onto the railing with her right hand and was carrying her workbook and utensils in her left hand. As she stepped onto the platform at the top of the stairs, the sole of her foot caught onto jagged tiles on the platform which is shown in both Claimant's Exhibit No. 4 and Claimant's Exhibit No. 5. She then fell and hit her left knee and head on the floor. After getting up from the

floor, she proceeded to the exam room where she told her professor that she had fallen. He told her she had to take the exam. She then went into the exam room, but stayed only one hour before she left.

Claimant testified that she did not seek medical treatment for several days after her accident because she did not think the fall was very serious. However, when her knee and head continued to ache she contacted ISU Health Services which was unable to help her because it was in the process of moving. She then sought treatment from Dr. Bernard Cahill, an orthopedic specialist in Peoria. Dr. Cahill saw Claimant on June 16, 1992. He assessed a probable meniscal tear and scheduled orthroscopic surgery which was performed on July 15, 1992. The surgery left Claimant with three one-inch to two-inch scars on her knee. Claimant testified she received therapy for her knee from the Orthopedic Institute of Illinois in 1993 and 1994 and now does therapy on her own. She further testified that Dr. Roger Rodriguez, her family physician, gives her pain medication for her knee when it is necessary.

Claimant testified that, following the surgery on her knee, she sought medical treatment for her headaches, which she thought might have been related in some way to the knee pain. She went to ISU Health Services which prescribed drugs for her. When her headaches caused her nausea and vomiting, ISU Health Services would give her an injection or she would go to either a hospital in Bloomington or Proctor Hospital in Peoria. ISU Health Services referred Claimant to the Diamond Headache Clinic ("Diamond Clinic") in Chicago in 1994. At the Diamond Clinic, Claimant underwent a series of tests, including CAT scans and MRIs, and was treated with medication. Her physician at the Diamond Clinic is Dr. Frietag, who

she sees three or four times a year. Claimant testified that her family physician, Dr. Rodriguez, has been treating her for her headaches since 1996. Regarding the headaches, Claimant testified she has also seen Dr. Miller at Physicians for Family Medicine in Peoria, Dr. El-Diery, an eye, ear, nose and throat specialist, and dentists at Associated Dentistry. Claimant further testified she has been treated by a dermatologist for the side effects of medication she has been prescribed. Her headaches have continued since the accident.

Claimant testified that prior to the accident she participated in running, swimming, water aerobics and skating, but now can only walk and swim. She continues to have headaches twenty-four (24) hours a day and continues to take prescription medicine for the headaches and over-the-counter medication for her knee. Claimant contends that the headaches have totally changed her life since she has problems concentrating and cannot work. She further contends the headaches made it difficult to finish college.

Claimant testified on cross-examination that she was not aware of the broken tiles prior to the accident and did not notify anyone at ISU about the condition. She stated that, prior to the accident, she had experienced tension headaches in the upper back portion of her neck for which she had seen a physician or two, including a neurologist, who diagnosed her as having cluster headaches. She testified that in 1987 her nose was broken while giving swimming lessons when a student swam into her. She continued to see physicians after the swimming incident regarding a blockage in her nose and an impingement in her shoulder and arm. She testified that, prior to the accident in May of 1992, she had taken antidepressants and medications prescribed by her dermatologist.

Claimant also testified on cross-examination that her headaches have prevented her from taking a standard schedule while attending school. Since the accident, she completed a Bachelor of Science in Political Science in 1994, Bachelor of Science in Criminal Justice in 1997, and was hoping to complete a Master's Degree in Political Science in the spring of 1999. Claimant further testified that, following the accident, she went back to work at her father's company, Construction Specialists, on a temporary basis until late 1993.

Claimant's mother, Shiree Burns, testified that, in May or June of 1992, she and her husband went to ISU and had a conversation with a middle-aged maintenance man in the stairwell where the accident happened. According to Mrs. Burns, the maintenance man informed them that he had informed the University prior to the accident that numerous tiles where the accident happened were broken in that building, but that nothing had been done about them. On cross-examination, Mrs. Burns was unable to provide any further description or identification of the man with whom she and her husband had spoken, except that his hair was brown.

Lyle Spaniol, a carpenter foreman out of Facilities Management at ISU, testified that it was his job to take work requests from Facilities Management and distribute them to the twenty-one (21) carpenters under his supervision to maintain the University. The work requests can be initiated by building service workers, janitors or designated individuals in each building. These work requests describe the area that needs to be maintained and are filed with the Work Management Center in Facilities Management. After the work requests are prioritized, they are assigned to the carpenters for completion. Mr. Spaniol testified that prior to the date of the accident,

May 6, 1992, he did not recall ever receiving a work request form for work to be done on the second floor of Edwards Hall, and that any request submitted in May of 1992 would have been completed by the time of the hearing. After viewing Claimant's Exhibit No. 6, Mr. Spaniol acknowledged that his crew had replaced some tiles in the hallway but he could not remember when that work had been done.

Mr. Spaniol testified on cross-examination that he did not know how long the tiles had been missing at the top of the stairway as shown in Claimant's Exhibit No. 5, and that to his knowledge the University did not have any procedure to inspect its various facilities for missing tiles, except for a janitor or someone else to report it to his department. According to Mr. Spaniol, only three square feet of tiles in the area could be replaced at any one time because of asbestos hazards, and the entire second floor of Edwards Hall would have to be shut down to replace more than three square feet of tiles. Mr. Spaniol further testified he thought that the tiles where the accident occurred had been in the building since it was built and were at least 100 years old.

The State is not an insurer of the safety of persons visiting its buildings. Rather, the State owes a duty of reasonable care to invitees such as Claimant in maintaining its premises. (*Berger v. Board of Trustees of University of Illinois* (1988), 40 Ill. Ct. Cl. 121, 124.) Claimant bears the burden of establishing by a preponderance of the evidence that the State breached its duty of reasonable care, and that the State had actual or constructive notice of the dangerous condition. *Hardeman v. State* (1995), 47 Ill. Ct. Cl. 292, 295.

This Court finds that the condition of the tile shown at the top of the stairs in Claimant's Exhibits Nos. 4 and 5

was a dangerous condition that was the proximate cause of Claimant's fall. Allowing broken tile to exist at the top of a stairway, that is frequented by students who should be expected to be carrying books and other utensils, shows a lack of reasonable care toward those students.

Respondent argues that Claimant has failed to show that Respondent had actual or constructive notice of the dangerous condition. The Court agrees that Claimant failed to prove Respondent had actual notice of the condition. The only testimony offered to prove actual notice was that of Claimant's mother, Shiree Burns, who testified that subsequent to the accident she and her husband had a conversation with a brown-haired, middle-aged maintenance worker at Edwards Hall who told her he had informed the University that numerous tiles where the accident happened were broken. She was unable to provide any further description or identification of the man, who was not available for cross-examination. This testimony lacks sufficient weight to prove actual notice.

However, the Court finds that Respondent has been shown to have had constructive notice of the dangerous condition. The condition of the tiles shown in Claimant's Exhibits Nos. 4 and 5 appears to have been in existence for some time prior to the accident. Respondent's witness, Mr. Spaniol, testified that he thought the tiles, where the accident occurred, had been in the building since it was built and were at least 100 years old. After reviewing Claimant's Exhibit No. 6, Mr. Spaniol acknowledged that his crew had previously replaced some of the tiles in the hallway, yet apparently no one at the University felt it was necessary to report and repair the broken tiles at the top of the stairway. Constructive notice is to be determined on a case to case basis. (*Lambatos v. State* (1992), 44 Ill. Ct. Cl. 238, 240.) Respondent can be construed as having

had sufficient notice of the broken tiles which caused Claimant to fall.

Respondent urges that Claimant's comparative negligence should either prevent any recovery or reduce the amount of any recovery she may receive. Claimant testified that she had used the entrance leading to the stairway on occasion, but usually entered Edwards Hall through a different entrance. She further testified that she was holding on to the railway with her right hand as she proceeded up the stairway and was carrying her workbook and utensils in her left hand. The Court finds that the record does not support Respondent's assertion that Claimant failed to take precautions to insure that she did not trip on the tiles.

For Claimant to recover, the Court must find that Claimant's injuries were caused by Respondent's negligence by a preponderance of the evidence. (*Gildehaus v. State* (1993), 46 Ill. Ct. Cl. 176, 185.) Claimant's Exhibit No. 8, an evidence deposition of Claimant's family physician, Dr. Roger Rodriguez, was presented on Claimant's behalf. He has treated Claimant since 1994. Dr. Rodriguez testified that in his opinion Claimant's knee injury and recurrent knee pain are related to the accident and that the surgery and treatment by Dr. Cahill was reasonable and necessary. It was also his opinion that Claimant's migraine headaches and cervicogenic pain are a direct result of her fall, and that the treatment she had received from the Diamond Clinic for the headaches was reasonable and necessary. Dr. Rodriguez also indicated that he had treated Claimant for depression and understood her depression to be related to the chronic pain she has experienced from her recurrent migraines. In Dr. Rodriguez's opinion, Claimant has a strong possibility that her headaches might never go away. He further opined that Claimant

will probably need arthroscopic surgery or physical therapy for her knee in the future, and that treatment for her headaches will probably have to be continued for the rest of her life.

The top page of Claimant's Exhibit No. 7 was admitted as a summary of Claimant's medical expenses as of August 7, 1997. It indicates the expenses totaled $8,565.47. Respondent did not introduce any medical evidence.

The Court finds that Claimant has proven that the injury to her knee and the resulting surgery, pain and suffering, and medical bills are the result of Respondent's negligence. It is more difficult to assess the proof regarding Claimant's migraine headaches, related depression and degree of disability. Dr. Rodriguez testified that Claimant's migraine headaches and depression are the result of her accident. However, Claimant testified she had received treatment for tension and cluster headaches as well as depression prior to her fall. At the hearing on October 15, 1998, Claimant testified she had been able to complete two undergraduate degrees since the accident and was hoping to complete a graduate degree in the spring of 1999.

It would have been helpful to have had more medical testimony regarding Claimant's migraine headaches and the consequences thereof. The Court finds that the medical testimony presented by Claimant is sufficient to prove that her migraine headaches and depression related thereto are the result of her accident. It is also the Court's opinion that, based on Claimant's testimony that she has been able to finish two undergraduate degrees since the accident and was planning to finish a graduate degree in the spring of 1999, she is not completely disabled. Claimant also made a claim in her complaint for lost wages but, except for her testimony that she temporarily worked for

82

her father's company after the accident and that her condition prevented her from holding a job, no evidence was presented to substantiate an award for lost wages. Based on the evidence presented, the Claimant is granted an award of $40,000 as compensation for her injuries, pain and suffering, and medical bills.